28771. FORD v. THE STATE.

512

Argued April 9, 1974 — Decided July 10, 1974.

*Thomas L. Murphy,* for appellant.

*Lewis R. Slaton, District Attorney, Joel M. Feldman, Isaac Jenrette, William M. Weller, Joseph J. Drolet,* for appellee.

Grice, Chief Justice.

Joseph Anderson Ford was convicted in the Superior Court of Fulton County for the murder of Charlie Crockett, and sentenced to life imprisonment. He appeals from his conviction and sentence. Enumerated as error are the overruling of his motion for new trial on all of its grounds, including the ground that the state failed to prove his guilt beyond a reasonable doubt.

■ The first error enumerated is that the trial court erred in allowing the state, over objection, to qualify prospective jurors as to the death penalty without first making some showing or giving notice to the appellant of the state's contentions as to any aggravating

circumstances as set out in Code Ann. § 27-2534.1 (Ga. L. 1973, pp. 159, 163) authorizing the death penalty.

The appellant argues that, unless the state gives notice prior to trial as to one or more of the statutory aggravating circumstances authorizing the death penalty listed in Code Ann. § 27-2534.1 (Ga. L. 1973, pp. 159, 163), the state would not be able to introduce or argue evidence of aggravating circumstances; that this would have the effect of making the case one in which the death penalty could not be imposed, and therefore one in which jurors could not be disqualified because of opposition to capital punishment.

The premise on which this argument is based has already been adjudicated by this court contrary to the contentions of the appellant.

In *Eberheart v. State,* 232 Ga. 247, 253, we considered a contention that the sentence of death was invalid because the district attorney did not submit any aggravating circumstances in evidence during the sentence stage of the trial. This court held: "The bifurcated trial was created to withhold matters inadmissible on the issue of guilt or innocence from the jury until that issue had been determined. The statute is clear that the pre-sentence hearing is for additional evidence and in no way excludes from consideration on sentence the matters heard on the issue of guilt or innocence."

The prosecuting attorney can not know with certainty what the witnesses may disclose on the trial. The fact that he waives any consideration of the death penalty at the conclusion of the trial is not proof that he acted in bad faith in disqualifying prospective jurors who were opposed to capital punishment.

There is no merit in this contention.

■ The second error enumerated is the denial of the appellant's motion to quash the indictment, based upon the fact that the appellant was brought before the commitment court for the purpose of getting a continuance of the commitment hearing without the assistance of his counsel, even though counsel's presence was requested.

The record shows that the appellant's counsel was

present when the commitment hearing was later held.

There is nothing in the record to indicate that anything transpired at the time the continuance was granted, for the further investigation of the case, which was detrimental to the appellant's case, or that any injury resulted to him by reason of the absence of his counsel at that time.

The error in taking the appellant before the commitment court for the purpose of continuing the commitment hearing, without his counsel, was harmless.

■ In the third enumerated error the appellant asserts that the trial court erred in refusing to grant his motion for directed verdict because the state did not prove the chain of possession of the weapon and missile alleged to have been used in the homicide.

This complaint is not valid.

The state's case was not dependent on the introduction in evidence of the weapon and missile.

Regardless of whether or not there was proper proof of the chain of possession to admit these items in evidence, there was no error in refusing to direct a verdict of acquittal on this ground.

■ Enumerated error 4 contends that the trial court abused its discretion in allowing the state to reopen its case after the close of its evidence, over the objection of the appellant.

After the motion referred to in Division 3 of this opinion, in which the appellant contended that the chain of possession of the weapon and missile had not been proved, the trial judge allowed the state to reopen its case to prove this possession.

The trial judge has a wide discretion in matters of this nature, and may allow the state to reopen a case after it has rested. *Miller v. State,* 226 Ga. 730 (3) (177 SE2d 253).

There was no abuse of discretion here.

■ It is contended in enumerated error 5 that the trial judge erred in denying the appellant's motion to suppress identification evidence based upon a prejudicially suggestive photographic line-up conducted in the absence of counsel.

It is contended that the testimony of Charles

Barbera, given at the hearing on the motion to suppress, showed that he placed his name on the back of the photograph of the appellant even though he could not identify him.

Charles Barbera did not testify at the trial, and no evidence was admitted in regard to his identification of the appellant from the photographs. Therefore, no injury resulted to the appellant from the denial of his motion to suppress identification evidence.

■ Enumerated error 6 alleges that the court erred in allowing in evidence prejudicial remarks by the state's expert witness, over the objection that it was unresponsive to the question.

This witness was employed by the Georgia State Crime Laboratory as a microanalyst. The assistant district attorney questioned him about his examination of the weapon alleged to have been used in the homicide. He was asked the question: "The gun standard size or how is the action of that gun, how does it work?" He replied, "Well, these are characteristically known as Saturday night specials, they are copies of more expensive and better made guns such as Smith & Wesson and a Colt but it does its job, it will kill a person, it will fire a bullet —"

The reply of the witness, although unresponsive to the question, was not harmful to the appellant.

The appellant did not dispute the fact that the deceased was killed by the appellant's gun, or that it was a deadly weapon.

■ Enumerated error 7 contends that the court erred in allowing into evidence uncorroborated testimony of an accomplice as to statements made by the appellant, without the benefit of a charge on the principle of law that such evidence must be corroborated.

The evidence referred to is the testimony of the witness Ellena Cheeley, who was in the automobile with the appellant when he bought drugs from the deceased, and also in the automobile with him when he went back to find the deceased and get his money back, after they discovered that the drugs were not good.

This witness testified that the appellant told her, "I am going to kill this nigger . . ."

There is no evidence that this witness was a "party"

to the crime, as that term is defined in Code Ann. § 26-801 (Ga. L. 1968, pp. 1249, 1271). The only guilty participation shown was in "hindering apprehension ... of a criminal," as defined by Code Ann. § 26-2503 (Ga. L. 1968, pp. 1249, 1312), by aiding the appellant in selling the homicide weapon.

Code § 38-121 requires the corroboration of an accomplice in a felony case. In *Mills v. State,* 193 Ga. 139, 148 (17 SE2d 719), this court held that an "accomplice" was one who was present at the commission of a crime, aiding and abetting the perpetrator, or an accessory before the fact; and that an accessory after the fact was not an accomplice. These rulings referred to the participants in crimes under the terms employed in the Code of 1933, §§ 26-501, 26-602, 26-604, and 26-4601.

The term "accessory after the fact" as defined by the Code of 1933, §§ 26-604 and 26-4601, has its nearest counterpart in the present criminal code in the crime of "hindering apprehension or punishment of a criminal." Code Ann. § 26-2503 (Ga. L. 1968, pp. 1249, 1312).

Applying the rulings in *Mills v. State,* 193 Ga. 139, 148, supra, and the cases there cited, to the present law, a witness who is guilty only of concealing evidence of a crime after its commission is not an "accomplice" within the meaning of Code § 38-121.

There is no merit in this enumerated error.

■ Enumerated error 8 asserts that the court erred in directing the jury to impose a sentence of life imprisonment, and thus depriving the jury of its right to determine the punishment to be imposed.

The evidence did not show any aggravating circumstance authorizing the death penalty as provided by Code Ann. § 27-2534.1 (Ga. L. 1973, pp. 159, 163), and it was not error to direct a sentence of life imprisonment, the only legal sentence which could be imposed.

■ The ninth enumerated error asserts that the court erred in not allowing the appellant to make and discuss his objection concerning the prosecution's qualification of the jurors as to the death penalty in the absence of the prospective jurors.

The trial judge correctly held that the discussion before the prospective jurors was not prejudicial to the

appellant.

Enumerated error 10 contends that the court erred in allowing into evidence testimony by a witness for the state that the only prior offense against the deceased had been "dead-docketed," over the objection that the answer had been suggested by the assistant district attorney by a leading question.

Generally the allowance of leading questions is within the discretion of the trial judge. *Cochran v. State,* 113 Ga. 736 (9) (39 SE 337); *O'Dell v. State,* 120 Ga. 152 (3) (47 SE 577); *Lyles v. State,* 130 Ga. 294 (4) (60 SE 578); *Gore v. State,* 162 Ga. 267 (5) (134 SE 36); *Ethridge v. State,* 163 Ga. 186 (3) (136 SE 72).

Here there was no abuse of discretion in allowing the assistant district attorney to ask the witness a leading question.

It is asserted in enumerated error 11 that the trial court erred "in allowing witnesses on behalf of the state to testify who were not on the list furnished to appellant's counsel pursuant to his demand on the day of arraignment."

The appellant in his brief refers to a pre-trial ruling of the trial judge that the state could use any witness whose name had been furnished to the appellant prior to his formal arraignment.

The record does not show that any witness was permitted to testify over the objection of the appellant that he did not have proper notice that the witness would be called.

There is therefore no merit in this enumerated error.

In enumerated error 12 the appellant contends that the trial judge erred, when defining justifiable homicide, in reading to the jury subsection (b) of Code Ann. § 26-902 (Ga. L. 1968, pp. 1249, 1272).

It is asserted that there was no evidence to which this portion of the charge was applicable, and that it tended to confuse the jury and deprive the appellant of his defense of justification.

It is not usually cause for a new trial that the judge gives in charge to the jury an entire Code section, only part of which is applicable to the case under

518

consideration. *Pippin v. State,* 205 Ga. 316 (9) (53 SE2d 482); *Highland v. State,* 127 Ga. App. 518 (1) (194 SE2d 332).

It is not cause for reversal of the appellant's conviction that the trial judge charged the entire section on justifiable homicide.

■ Enumerated error 13 complains that the trial court erred in failing to give a requested charge on reasonable doubt, and particularly the last sentence of the requested charge: "And if after considering all of the facts, circumstances and evidence in the case your minds are wavering and unsettled that the defendant is guilty to a moral certainty, then you should find the defendant not guilty."

While a similar charge was approved in *Cash v. State,* 222 Ga. 55, 56 (148 SE2d 420), as against the objections raised in that case to such charge, there is no indication in the *Cash* case that a charge on reasonable doubt in this exact language is required in every case.

The trial judge in the present case fully and fairly defined reasonable doubt, and instructed the jury that it should not find the appellant guilty of any offense if it had a reasonable doubt as to his guilt of each and all offenses charged against him.

Therefore, it was not error to refuse to give the requested charge.

■ The fourteenth enumerated error asserts that the court erred in inadvertently informing the jury that involuntary manslaughter could be punished by imprisonment of not less than one year.

It is argued that this prejudiced the appellant's right to the bifurcated process as required by Code Ann. § 27-2534 (Ga. L. 1970, pp. 949, 950; Ga. L. 1971, p. 902; Ga. L. 1973, pp. 159, 161), as follows: "At the conclusion of all felony cases heard by a jury, and after argument of counsel and proper charge from the court, the jury shall retire to consider a verdict of guilty or not guilty *without any consideration of punishment.* " (Emphasis supplied.)

The judge defined voluntary manslaughter, and then defined involuntary manslaughter. Following the latter definition he stated: "A person convicted under this subsection shall be punished by imprisonment for not less

than one year — well, disregard the punishment. You are not concerned with that whatsoever."

It is improper for the court to give any instruction to the jury concerning possible sentences in a felony case before the jury has determined the question of guilt or innocence. *Moore v. State,* 228 Ga. 662, 665 (187 SE2d 277); *Hasp v. State,* 228 Ga. 806 (1) (188 SE2d 511).

It is obvious, in the present case, that the trial judge inadvertently began to read the punishment for involuntary manslaughter, and stopped abruptly, realizing that the punishment should not be mentioned at that stage of the trial. He gave no other charge on possible sentences, and, as shown by the language quoted, instructed the jury to disregard his statement about the punishment for involuntary manslaughter.

We do not think this fragmentary charge on the punishment for involuntary manslaughter, under the facts of this case, could have harmed the appellant.

■ Enumerated error 15 asserts that the court erred in allowing photographs of the victim in evidence. These photographs are not in the record, and thus this alleged error can not be considered.

■ The final enumeration of error is that the state failed to prove the guilt of the appellant beyond a reasonable doubt.

There was no eyewitness to the homicide. The testimony of the state's witness, Ellena Cheeley, was in substance that which follows: On the date of the homicide the appellant pawned his gun to obtain money to buy drugs, and bought the drugs from the deceased. After he and the witness had tried to use the drugs and found that they were not good, the appellant "was mad about it" and said that he was going to get his money back. The appellant further said, "I am going to kill this nigger," but the witness did not think he meant it. The appellant went back to the service station and got his gun back which he had pawned. Another person came by in an automobile, and the appellant asked the man to take them' down to Auburn Avenue. They got in the automobile and rode down Auburn Avenue, where they saw the deceased. The appellant got out and told them to go around the block and come back for him. When they

got back, the appellant got in the automobile, and the witness asked him if he got his money back. He said that he did not. He told her that he had the gun out to scare the deceased, that the deceased distracted his attention, then grabbed the gun, and it fired. The next day the appellant and the witness took the gun and sold it to a Mr. Bell.

This witness had signed two statements prior to the trial, which were partly contradictory of her testimony on the trial. There was evidence by the driver of the automobile, and the man to whom the appellant had pawned his gun, consistent with this witness' testimony on the trial.

The appellant in his statement related that he took the gun with him because he was scared, that his hand was in his pocket beside the pistol, that the deceased distracted his attention and then "swung" at him, that he pulled his gun out, they struggled, and the gun fired.

The jury was authorized to find from the evidence that the homicide was murder, and the verdict was not without evidence to support it.

*Judgment affirmed. All the Justices concur, except Gunter, J., who dissents from the rulings made in Divisions 1 and 8.*