## A99A1192. WHITLOCK v. THE STATE.

(521 SE2d 901)

Phipps, Judge.

Jimmy Whitlock was convicted of armed robbery and aggravated assault. For the armed robbery, he was given the mandatory minimum sentence of ten years' imprisonment without possibility of parole. OCGA § 17-10-6.1 (b). He was given a concurrent ten-year sentence for the aggravated assault. Following denial of his motion for new trial, he appeals his convictions.

An indictment was returned charging Whitlock, Terry Evans, and Joseph Houston with one count each of armed robbery and aggravated assault on June 7, 1997. The indictment alleged that a purse and its contents had been taken from Maggie Scott by use of a handgun and that an aggravated assault with intent to rob was committed upon Bill Sparks. The indictment also charged Evans, Houston, and a third individual with two counts of robbery by sudden snatching on May 29, 1997. Evans pled guilty to the June 7 crimes. He and his girlfriend, Rebecca McDonald, testified for the State at Whitlock's trial.

Sparks and Scott were University of Georgia students. Testimony given by them showed that at approximately 3:00 a.m. on June 7, they were walking toward Sparks's apartment in a dimly lit area on Baxter Street when they were accosted by three males. The one in the middle pointed a gun at Sparks's face and demanded money. Sparks handed his wallet to the taller man on the right while telling him that the wallet contained no money. After the taller man searched the wallet and returned it, Sparks gave him Scott's purse containing a billfold with credit cards and six dollars in cash. The robbers kept the billfold and fled the scene.

When questioned by police concerning the May 29 robberies, McDonald provided information as to the crimes committed on June 7. McDonald testified that on the evening of June 6, she and her friend Kim Trent had come from Commerce to Athens where they "met up" with her boyfriend Evans, Houston, and Whitlock; and that she observed Evans and Houston in possession of guns.

Testimony given by McDonald and Evans showed that Whitlock was attempting to secure money so he and Trent could get a motel room. At approximately 3:00 a.m. on June 7, the group was proceeding down Baxter Street in a car owned by McDonald but driven by Evans, when Whitlock noticed a male and a female college student standing in the area of an apartment building. At Whitlock's urging, Evans stopped the car and the three men exited it. Then they went around the building and returned to the car several minutes later.

McDonald testified that the three men attempted to conceal their faces as they walked away from the car. Evans testified that

Houston pulled a handgun and told the victims to "give it up," whereupon the wallet and purse were handed to Whitlock. According to Evans and McDonald, Evans drove McDonald and the others to a Krystal restaurant after Evans and the other two men returned to the car. According to McDonald, Evans and Houston discussed the robbery en route, and Houston said that he had told the victims to "give it up." McDonald further testified that while they were in the car, the billfold was given to her after Whitlock went through it and removed the six dollars; and, after arriving at the restaurant, she deposited the billfold and credit cards in a trash can. McDonald's and Evans's testimony further showed that the group went from the Krystal to a motel and got a room in Trent's name. They stayed there for about one and one-half hours. Whitlock and Trent were in the room by themselves most of the time.

Neither Sparks nor Scott was able to positively identify any of their assailants. But upon viewing Whitlock at trial, Sparks testified that he was the same height, build, and general physique as the man who had taken his wallet and Scott's purse. Scott gave like testimony concerning this man's height. Sparks also testified that the man who took the wallet and purse was either bald or nearly bald. McDonald testified that on June 7, Whitlock was almost bald.

1. Based on conflicts in the testimony of McDonald and Evans concerning events prior and subsequent to commission of the armed robbery and aggravated assault, Whitlock contends the evidence is insufficient to support his convictions. Whitlock argues that McDonald and Evans were both accomplices in the crimes and their testimony contained too many conflicts to corroborate each other.

"In a felony case, 'there can be no conviction upon the testimony of an accomplice, unless the same is corroborated by other evidence connecting the accused on trial with the perpetration of the crime, and tending to show his participation therein.' [Cit.]" *Adkins v. State*, 138 Ga. App. 349, 350 (1) (226 SE2d 137) (1976).

However,

"[i]t is not required that this corroboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular. [Cits.] Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict. [Cit.] The sufficiency of the corroboration of the testimony of the accomplice to produce conviction of the defendant's guilt is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it can not be said, as a matter of

law, that the verdict is contrary to the evidence. [Cit.]"

*Brown v. State*, 232 Ga. 838, 840 (209 SE2d 180) (1974).

Moreover, the testimony of one accomplice may corroborate that of another. *Brookshire v. State*, 230 Ga. App. 418, 420 (496 SE2d 757) (1998). Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. *Thrasher v. State*, 225 Ga. App. 717-718 (1) (484 SE2d 755) (1997).

It appears from the record that there is an insufficiency of evidence to support a finding that McDonald was a party to the armed robbery. However, corroboration of her testimony still would be needed if she became a participant in the criminal enterprise by receiving stolen property. See *Selvidge v. State*, 252 Ga. 243 (313 SE2d 84) (1984). Even if corroboration were required for this reason, Evans's and McDonald's testimony did corroborate one another as to Whitlock's guilt as each witness testified to facts and circumstances which, in themselves and independently of the testimony of the other, directly connected Whitlock to the crimes. See generally *Brookshire*, supra. The sufficiency of the corroborating testimony was a matter for the jury. See id. Viewed in a light most favorable to the verdict, the evidence would authorize any rational trier of fact to conclude beyond a reasonable doubt that Whitlock is guilty of the offenses charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Whitlock charges the trial court with error in limiting his cross-examination of Evans concerning the sentences he could have received for the crimes he committed and his motivation for testifying at trial.

On direct examination, Evans testified that he pled guilty to the armed robbery and aggravated assault charges and had not made any deal with the district attorney's office. On cross-examination, Evans claimed no such deal could have been made. Before Evans could explain the reason, a bench conference was conducted at the behest of the court. During the conference, defense counsel argued that to disprove Evans's claim that there was no deal, he wanted to show the jury that Evans could have received a maximum sentence of eighty years' imprisonment if he had been convicted of the four crimes charged in the indictment but was only given a minimum sentence of ten years. After extensive discussion, the court allowed counsel to show the crimes with which Evans had been charged and the counts which were dismissed, and that he received minimum sentencing for the crimes to which he pled guilty even though he could have received a substantial amount of time on the charges. The court would not let counsel inform the jury of the lengths of the minimum and maximum sentences because that would have injected into the

trial the matter of the sentencing to which Whitlock was subject, thereby diverting the jury's attention from the issues of guilt or innocence.

" ' "It is especially important in a case where a witness or an accomplice may have substantial reason to cooperate with the government that a defendant be permitted to search for an agreement between the government and the witness." [Cit.] . . .' [Cit.]" *Hines v. State*, 249 Ga. 257, 260 (2) (290 SE2d 911) (1982). Consequently, the trial court abuses its discretion when it prohibits all inquiry on the subject. Id.; see *Owens v. State*, 251 Ga. 313, 314 (1) (305 SE2d 102) (1983). The trial court nonetheless retains wide latitude to impose reasonable limits on cross-examination, based on such concerns as the prevention of prejudice and of questioning on subjects that are only marginally relevant. *Shaw v. State*, 201 Ga. App. 456, 457 (411 SE2d 537) (1991) (physical precedent only), citing *Delaware v. Van Arsdall*, 475 U. S. 673, 679 (106 SC 1431, 89 LE2d 674) (1986).

Here, the State's witness denied he had made a deal with the prosecutor in exchange for his testimony. The testimony Whitlock was permitted to elicit from the witness provided an ample basis for the jury to infer that such a deal had been made. Moreover, the so-called "minimum" sentence which the witness received was ten years' incarceration without possibility of parole for the only count of the indictment subject to such a requirement. The limitation imposed on Whitlock's cross-examination of the witness did not hamper his ability to challenge the witness's credibility. We find no abuse of discretion.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 31, 1999.

*Anthony T. Pete*, for appellant.
*Harry N. Gordon, District Attorney, James D. Love, Assistant District Attorney*, for appellee.