A99A1001. GILLIAM v. THE STATE.
(522 SE2d 766)

PHIPPS, Judge.

Tony Demetrius Gilliam was convicted of robbery. He raises two issues on appeal: Did the trial court err by not declaring a mistrial or instructing the jury to disregard identification testimony from witness Beverly Weathers; and was defense counsel ineffective in not objecting to hearsay testimony and not stating or reserving objections to the court's charge to the jury?

At approximately 9:30 p.m. on January 27, 1996, Betty Green

was accosted in the parking lot of a Speedway convenience store in Richmond County. As Green exited her car with a purse on her shoulder, a man approached her from behind and said, "Give it up; give up this purse." The man grabbed the purse, and he and Green struggled over it. Ultimately, the man took the purse and ran away.

1. During the trial on July 29, 1996, Beverly Weathers testified for the State that she observed the robbery as she sat in her van at the Speedway. Somewhat equivocally, Weathers identified Gilliam during direct examination:

Q: Okay. Do you see the person in the courtroom today that you saw that night?
A: I was never shown anything after that, so it's — it is hard right now to just say that is him, but I would say he — *this man over here resembles him.*
Q: Okay. But are you sure or are you not sure? If you can't be positive, you need to tell the Court that.
A: Yes, sir, I would say it was him.

(Emphasis supplied.) On cross-examination, Weathers wavered further and revealed that earlier on the morning of trial, she was shown a single photograph of Gilliam by the State's attorney: "Q: Are you 100% positive that that is, in fact, the same gentlemen [sic] or does he just resemble Tony? A: *I've had nothing to compare it to until this morning. I was shown a photo this morning before court.*" (Emphasis supplied.) After two other witnesses testified, defense counsel moved the court to declare a mistrial based on Weathers having been shown the photograph of Gilliam. Alternatively, counsel moved the court to instruct the jury that it should disregard Weathers's identification testimony. The court denied both motions.

To preserve a motion for mistrial for appellate review, the motion must be made contemporaneously with the objectionable testimony. *Stephens v. State*, 232 Ga. App. 738, 739 (2) (503 SE2d 643) (1998); *Sweeney v. State*, 233 Ga. App. 862, 865 (4) (506 SE2d 150) (1998). Gilliam's motion for mistrial was not timely and was waived because it was not made contemporaneously with the objectionable testimony. See id.

But under *Sharpe v. Dept. of Transp.*, 267 Ga. 267 (1) (476 SE2d 722) (1996), the motion to instruct the jury to disregard Weathers's identification was preserved. *Sharpe* held that where a criminal defendant alleges evidence presented was inadmissible because it was obtained in violation of his constitutional rights, he may properly move to strike the evidence at any point before the jury retires. Id. at 271. Gilliam's motion is basically a motion to strike, and the rationale is that Weathers's in-court identification of him was

obtained in violation of his due process rights. See generally *Neil v. Biggers*, 409 U. S. 188, 198-199 (93 SC 375, 34 LE2d 401) (1972).

"[R]eliability is the linchpin in determining the admissibility of identification testimony. [Cit.]" *Burrell v. State*, 239 Ga. 792, 793 (239 SE2d 11) (1977). A two-part test is used. "The threshold inquiry is whether the identification procedure was impermissibly suggestive. Only if it was need the court consider the question: whether there was a very substantial likelihood of irreparable misidentification." (Punctuation omitted.) *State v. Frye*, 205 Ga. App. 508, 509 (2) (422 SE2d 915) (1992) (citing *Gravitt v. State*, 239 Ga. 709, 710 (4) (239 SE2d 149) (1977)). The photograph shown to Gilliam was likely one of several from Speedway surveillance tapes, which were recorded two months before the robbery. Weathers described the picture as "a single black and white photograph of one man in front and one in back of him." The prosecutor said he showed Weathers a group of surveillance photographs, each showing Gilliam and another black male in the store. According to defense counsel, "Weathers was shown a single photograph containing the back of a white male and the facial view of a black male." All the descriptions are consistent with eight still photographs admitted into evidence. In six of them, Gilliam, a black male, is standing at the counter of the store, facing the camera. A white store clerk is standing across the counter from Gilliam facing him in each picture. In one of those six pictures, a black male is standing behind Gilliam, as if in line.

Showing Weathers any of those photographs was impermissibly suggestive.[1] See *Bradley v. State*, 152 Ga. App. 902, 903 (264 SE2d 332) (1980); *Talley v. State*, 137 Ga. App. 548, 550 (2) (224 SE2d 455) (1976). During the roughly six-month period between the robbery and trial, no photographs were shown to Weathers. Then, shortly before trial, she was shown a picture which depicted Gilliam far more prominently than anything or anyone else.

In determining whether a suggestive pretrial procedure created a very substantial likelihood of irreparable misidentification, we consider the totality of the circumstances through five factors: (1) the witness's opportunity to view the accused at the time of the crime; (2) the witness's degree of attention during the crime; (3) the accuracy of the witness's prior description of the accused; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Frye*, supra at 509 (citing *Neil v. Biggers*, 409 U. S. at 199).

---

[1] In its brief to this Court, the State does not dispute the suggestiveness of showing Weathers the subject photograph. Instead, the State asserts that notwithstanding the showing of the photograph, the possibility of misidentification created by the showing was not so great as to warrant exclusion of the in-court identification.

Weathers testified that: (a) she "zeroed in on [the robber]" after her husband alerted her the man was suspicious and standing near their vehicle; (b) she watched this person closely, because she had an intuition that he would do something wrong, and she wanted to be able to identify him; (c) she was very concerned about this person, because her twelve-year-old daughter was still inside the convenience store, and she was worried the man might attempt to rob the store; (d) when the man stood near her van, he was only about six feet away.

Weathers also gave descriptions of the perpetrator's clothing and general appearance that are consistent with those of the other two eyewitnesses. All described the perpetrator as being a black male around six feet tall who wore a green military-type field jacket. Denese Rhodes, a store clerk at the Speedway, testified that Gilliam wore such clothing at the store the night of the robbery and always wore it every time she had seen him there. All these things inspire confidence in the reliability of Weathers's identification.

Gilliam emphasizes Weathers's uncertainty. While Weathers's memory of the perpetrator clearly diminished during the six months before trial, and the wisdom of showing her a single photograph of Gilliam was questionable, the chance of misidentification was not irreparable. A great danger with suggestive identification procedures is the difficulty in discerning whether a witness is testifying from memory or exposure to the suggested image. A witness who has transferred an image will likely not know themselves they have done so and may mistakenly testify very convincingly that the accused is the perpetrator.

But this jury heard Weathers's equivocation and knew she had been shown the picture. They were in a position to factor those things into the weight of her testimony. See *Rivers v. State*, 225 Ga. App. 558, 562 (3) (484 SE2d 519) (1997). The judge instructed the jury to consider among other things: (1) the level of certainty shown by the witness about her identification; (2) the possibility of mistaken identity; and (3) whether the witness's identification may have been influenced by factors other than the view that the witness claimed to have. The court did not err in refusing to instruct the jury to disregard Weathers's identification.

2. With respect to his ineffective assistance of counsel claims, Gilliam must show that his "trial counsel's performance was deficient and that it prejudiced [him] so as to deprive [him] of a fair trial. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)." *Earnest v. State*, 262 Ga. 494, 496 (5) (422 SE2d 188) (1992).

Gilliam's first contention relates to the following testimony from Investigator Dwayne Piper:

One person who insisted on remaining anonymous stated that not only does she — is she familiar with the person in the photograph, she knew his first name and last name. She identified the person as Tony Gilliam. She further testified that this person had a girlfriend by the name of Lucy Mims and lives in the area of Mom and Pop's Grocery Store or Convenience Store which is located on the 2000 block of Broad Street.

Gilliam is correct that this testimony was objectionable as hearsay. It was not, as the State asserts, admissible to explain Piper's conduct. This case was not one of the rare instances where the investigating officer's motives, intent or state of mind was relevant. See *Brinson v. State*, 268 Ga. 227, 228-229 (3) (486 SE2d 830) (1997).

We do not find it likely, though, that counsel's error factored in the outcome. See *Richards v. State*, 232 Ga. App. 584, 588-589 (5) (502 SE2d 519) (1998). First, Piper's rendition of the anonymous photographic identification was cumulative of identifications already related at trial from the same set of photographs. The picture Piper showed the anonymous person was one of the still store surveillance photographs. Store clerk Denese Rhodes identified Gilliam at trial in the pictures and related a pretrial identification of Gilliam she made from them. The pictures were also admitted into evidence during Rhodes's testimony, and the jury was in a position to view the pictures and assess for itself whether Gilliam was the man shown.

Finally, the weight of properly admitted evidence against Gilliam was heavy. In addition to identifying Gilliam twice in the still photographs, Rhodes positively identified Gilliam in court as the robber and testified that before trial she picked him from a photographic array of six people. Green testified that Gilliam was near her car before she was robbed, and she was attacked from behind. Weathers testified she believed Gilliam was the robber. Green, Weathers and Rhodes all testified that the robber wore distinctive military clothing, which Rhodes testified Gilliam habitually wore. Finally, Gilliam ran when approached by police.

We also find no merit in Gilliam's assertion that his trial counsel was ineffective for failing either to object or reserve objections to the court's charge to the jury. Gilliam asserts no particular error in the court's charges. We have no reason to find that trial counsel should have objected.

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED SEPTEMBER 28, 1999.

*Garrett & Gilliard, Kirk E. Gilliard*, for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.