## S99A1557. HODO v. THE STATE.
### (528 SE2d 250)

HINES, Justice.

Following a jury trial, Kevin Hodo was convicted of felony murder while in the commission of aggravated assault and possession of a firearm by a convicted felon in connection with the fatal shooting of Bernard Dodds. Hodo appeals, challenging the conduct of voir dire, the admission of certain testimony, the allowed extent of cross-examination of a witness, the trial court's alleged improper limitation of his counsel's closing argument, and the court's instruction to the jury. Finding the challenges to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed that on the evening of January 31, 1996, Hodo and another man, identified as Hodo's cousin, went to drug dealer Reed's house to see about purchasing "powder cocaine." After making several telephone calls, Reed rode with the men to a rooming house on South Gordon Street. Drugs were bought and sold there. Dodds worked at the rooming house as the "houseman," and answered the door. Reed entered to "[look] at the product" while the other men waited in the car. After Reed told the men that "everything was all right," the men too went into the rooming house. Hodo and his cousin paid $200 for the purported cocaine. The men went back to the car, examined their purchase, and then took Reed home about 6:00 p.m. or 7:00 p.m.

Shortly thereafter, Hodo discovered that he had been sold "bad dope," and he and his cousin returned to the rooming house. Jones, a

---

[1] The crimes occurred on January 31, 1996. On July 29, 1997, a Fulton County grand jury indicted Hodo for malice murder, felony murder (possession of a firearm by a convicted felon), felony murder (aggravated assault), aggravated assault (against Bernard Dodds), possession of a firearm by a convicted felon, and aggravated assault (against Kenny Seagraves). Hodo was tried by a jury, commencing on October 6, 1998; he was acquitted of malice murder, and found guilty of aggravated assault against Dodds and felony murder while in the commission of aggravated assault. Hodo pled guilty to possession of a firearm by a convicted felon, and the remaining charges of felony murder and aggravated assault against Seagraves were placed on the dead docket. By orders signed on October 12, 1998, and filed on November 30, 1998, Hodo was sentenced to life imprisonment for felony murder and a consecutive five years incarceration for the firearm possession. The aggravated assault merged with the felony murder for the purpose of sentencing. Hodo filed a notice of appeal on October 22, 1998. See *McLeod v. State*, 271 Ga. 455, n. 1 (520 SE2d 692) (1999), and the cases cited therein. The appeal was docketed in this Court on July 21, 1999, and the case was orally argued on October 12, 1999.

renter at the house, heard a knock at the door and went to answer it. Hodo and his companion tried to push past Jones, asking for the "houseman." Dodds came downstairs and Hodo stated to Dodds, "[Y]ou know who the guy was who sold this s___ to me." Jones returned to his bedroom. Jones then heard noises as if the men were "wrestling or something." Jones went to the living room and saw Hodo holding Dodds by the shirt. Dodds pleaded to Hodo, "Please, man, I don't know nothing about it, please, I don't know nothing about it." Hodo then shot Dodds with a small black handgun, which appeared to Jones to be .22 or .25 caliber. Dodds died as the result of a gunshot wound to the chest, which perforated his heart and right lung.

About six months after the killing, Jones identified Hodo as the shooter in a photographic lineup conducted in New Orleans, where Jones was incarcerated. Police recovered a .25 caliber pistol from Hodo's mother's home; forensic tests showed it to be the murder weapon.

1. The evidence, including Hodo's admission that he was a convicted felon in possession of a firearm, was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to find Hodo guilty beyond a reasonable doubt of the crimes for which he was convicted.

2. Hodo contends that he was denied his constitutional right to a fair and impartial jury because the trial court did not give him the opportunity, under OCGA § 15-12-133, for sequestered individual examination of members of the jury panel "as to the nature of the offense," and because during voir dire, the court referred to him as a "criminal" defendant, thereby improperly placing his character in issue and expressing an opinion about his guilt. But, the contentions are without merit.

(a) OCGA § 15-12-133 provides for the individual examination of prospective jurors. *Sanborn v. State*, 251 Ga. 169, 170 (3) (304 SE2d 377) (1983). The substance of the statute is the right to an individual response, not to an individual question. *State v. Hutter*, 251 Ga. 615, 617 (307 SE2d 910) (1983). What is more, it does not mandate sequestered voir dire. *Sanborn* at 170 (3). "The granting of sequestered voir dire is within the discretion of the court, and a showing of prejudice from denial is necessary to show an abuse of discretion." Id. at 170 (3), citing *Smith v. State*, 245 Ga. 168 (263 SE2d 910) (1980); *Stinson v. State*, 244 Ga. 219 (259 SE2d 471) (1979). See also *Edmond v. State*, 267 Ga. 285, 289 (5) (476 SE2d 731) (1996).

Hodo fails to make such a showing. He claims prejudice from taint of the entire panel because certain of the prospective jurors initially indicated doubt about the ability to be fair and impartial due to the violent nature of the charged offenses and because of past experi-

ence with violence.[2] However, the record does not demonstrate any taint of the venire; the other venirepersons indicated that they were unaffected by the responses. Accordingly, there was no abuse of discretion in denying sequestered voir dire. *Sanborn* at 170 (3).

(b) Hodo likewise fails in his contentions that the trial court placed his character in issue and commented on his guilt during voir dire by calling him a "criminal" defendant. The court did not refer to Hodo as a criminal, but rather, in essence, informed the prospective juror being questioned that a criminal defendant is entitled to the presumption of innocence upon coming into court. The court's remarks were neither an improper comment on Hodo's character nor a prohibited expression of opinion on the evidence. See OCGA § 17-8-57; *McClain v. State*, 267 Ga. 378, 384 (3) (b) (2) (477 SE2d 814) (1996).

3. There is no merit to Hodo's assertion that he is entitled to a new trial because the State violated a pre-trial stipulation by introducing into evidence testimony regarding a photograph of himself seized when police executed a search warrant at his mother's residence. That the prosecuter asked the investigating officer whether there was information around the mattress, under which the murder weapon was found, that would indicate to whom the bed belonged was not inconsistent with the agreement between the defendant and the State. A reasonable interpretation of the prosecutor's stipulation was that the State agreed that the recovered weapon was the only item that it intended to physically introduce into evidence; the agreement did not extend to testimony given by the investigating officer about what was observed during the execution of the search of the mother's home.

What is more, Hodo cannot demonstrate any harm from the testimony that the officer found a photograph of Hodo beside the bed. *Davis v. State*, 266 Ga. 801, 804 (9) (471 SE2d 191) (1996). Hodo himself testified that he had hidden the gun under the bed which he used at his mother's house.

4. There is likewise no merit to the claim that Hodo's constitutional right to confrontation was violated when the trial court did not permit Hodo to question State's witness Reed about the potential sentence Reed could face because of the criminal conduct he had admitted on the stand.

It is certainly true that the cross-examination of a witness is a matter of right, and one of the permissible purposes of cross-examination is to attempt to elicit facts demonstrating that a wit-

---

[2] Hodo also mentions in argument that the trial court did not give a curative instruction to the entire panel, but the record reveals that Hodo failed to timely make any such request.

ness's testimony is either unbelievable, biased, or partial. *Carswell v. State*, 268 Ga. 531, 534 (5) (491 SE2d 343) (1997). Thus, the potential bias or partiality of a witness may always be explored on cross-examination. Id. at 535 (5), citing *Davis v. Alaska*, 415 U. S. 308, 315 (94 SC 1105, 39 LE2d 347) (1974); *Hines v. State*, 249 Ga. 257, 260 (290 SE2d 911) (1982). Here, Hodo was not cut off from such inquiry, but was allowed to amply explore Reed's potential for bias or partiality, and thus, his credibility. Compare *Garcia v. State*, 267 Ga. 257, 259 (7) (477 SE2d 112) (1996). Hodo was permitted to ask Reed if he realized that he could be prosecuted and to repeatedly question Reed about any benefit he expected to receive in exchange for his testimony. The mere fact that Hodo was unable to ask Reed to conjecture about possible punishment did not diminish Hodo's attempt to show Reed's motive for testifying on behalf of the State, and did not amount to an abuse of the trial court's discretion. *Bennett v. State*, 265 Ga. 38, 41 (4) (453 SE2d 458) (1995).

5. Hodo contends that the trial court improperly limited his closing argument when it stopped him from arguing that the photograph obtained during the search of his mother's home was used by police in pretrial identification of him as the perpetrator. But, as the trial court concluded, there was no evidence before the jury that the photograph had, in fact, been used in the witness identifications. See *Spear v. State*, 270 Ga. 628, 630 (3) (513 SE2d 489) (1999). Even assuming that it was a permissible inference from the evidence, Hodo has failed to show how the limitation of his argument caused him harm. *Davis v. State*, supra at 804 (9). He does not explain, and it is difficult to discern, how the argument would have, as he claims, cast doubt on the reliability of the identification process. Moreover, Hodo was permitted to argue to the jury that the police would not reveal "everything that they've done," and that the photographic identifications were suggestive.

6. Finally, the trial court did not err in failing to give the jury instructions on voluntary manslaughter, mutual combat, and bare suspicion. The State's evidence did not suggest the provocation necessary to find that the killing was voluntary manslaughter. OCGA § 16-5-2; *Armstrong v. State*, 264 Ga. 505 (3) (448 SE2d 361) (1994). Nor did it allow for the finding of a mutual intention or agreement to fight sufficient to support a charge on mutual combat. OCGA § 16-3-21 (b) (3); *Sinkfield v. State*, 266 Ga. 726, 727 (2) (470 SE2d 649) (1996). In fact, Hodo testified at trial that he was not present when the shooting occurred and that he had never seen the victim.

Instruction on bare suspicion had no applicability either. The trial evidence raised more than a bare suspicion of Hodo's guilt. See *Ney v. State*, 227 Ga. App. 496, 504 (4) (j) (489 SE2d 509) (1997). There was eyewitness testimony that Hodo was the shooter. What is

more, the trial court charged the jury on the presumption of innocence and the need for the State to prove guilt beyond a reasonable doubt. *Mitchell v. State*, 233 Ga. App. 92, 94 (5) (503 SE2d 293) (1998), citing *Lowe v. State*, 267 Ga. 180, 181 (2) (476 SE2d 583) (1996); *Kennedy v. State*, 205 Ga. App. 152, 156 (5) (d) (421 SE2d 560) (1992).

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 27, 2000.

*Dwight L. Thomas, Jo Ann Claudrick*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Phyllis M. Burgess, George W. King Snyder, Jr., Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jeanne K. Strickland, Assistant Attorney General*, for appellee.