## A01A2013. PEREZ v. THE STATE.
### (564 SE2d 208)

PHIPPS, Judge.

Pedro Perez was tried by a jury and convicted of trafficking in methamphetamine in an amount greater than 400 grams. His co-defendant, Anibal Cruz, negotiated a guilty plea to a lesser offense in exchange for his testimony against Perez. Perez claims that the trial court erred by impermissibly limiting his cross-examination of Cruz about the reduced sentence he had received as part of his deal with the State. We agree and reverse on this ground. Perez also claims that the trial court erred by allowing the State to introduce evidence of his character and by admitting a tape-recorded telephone conversation between Cruz and a confidential informant. We hold that Perez has waived his right to challenge the admission of the character evidence and further hold that the trial court did not err by admitting the tape recording.

Perez and Cruz arranged to sell a confidential informant a pound of methamphetamine in the parking lot of an abandoned Sam's Club warehouse in Austell. The informant was wired for sound, and when it became clear that drugs had been exchanged for money, members of the Drug Enforcement Administration (DEA) task force moved in

and arrested Perez and Cruz. They were indicted for trafficking in methamphetamine in an amount greater than 400 grams.

1. Cruz negotiated a guilty plea to a lesser offense in exchange for his testimony against Perez. On direct examination, Cruz admitted that he had pled guilty and been sentenced to serve 15 years. During Cruz's cross-examination, Perez's attorney sought to reveal the terms of Cruz's deal with the State. The goal of the questioning objected to by the State and precluded by the trial court was to show the significant reduction in sentence (from 25 years to 15 years) given in exchange for Cruz's testimony. Because Cruz offered the only testimony from a witness who observed the transaction for which Perez was prosecuted, exposing Cruz's motive, bias, and interest in cooperating with the State was crucial to Perez's defense. In *Vogleson v. State*,[1] this court held that a defendant has a constitutionally protected right to explore on cross-examination a co-defendant's or an accomplice's agreement with the State, including the amount of prison time the co-defendant or accomplice would avoid by agreeing to cooperate with the State and testify against the defendant. Applying *Vogleson*, we reverse.

The dissent argues that *Vogleson* should be reversed in light of *Hodo v. State*,[2] a Supreme Court of Georgia decision we distinguished in *Vogleson*. But this case is even more distinguishable from *Hodo* than was *Vogleson*. Here, Cruz had already been sentenced before testifying against Perez whereas the witness in *Hodo* was not involved in the crimes being tried and had not been charged with any crime. Requiring the witness in *Hodo* to speculate about crimes with which he might be charged differs significantly from requiring an accomplice to reveal the disparity between the sentence he has received and the minimum sentence he would have received if not for his deal with the State.

The dissent's claim that our decision will mislead the jury about the fact that an accomplice or co-defendant may serve less than his entire sentence because of the possibility of parole is itself misleading. The goal of the cross-examination protected here is to expose a witness's bias or motivation by revealing the deal the State gave to the accomplice/witness for agreeing to testify against the defendant. The most important aspect of such a deal is the potential for a reduction in the sentence imposed by the trial court. The authority to grant parole or other relief from the sentence imposed by the trial court rests with the State Board of Pardons & Paroles,[3] not the district attorney's office. Thus, the decision to grant parole cannot be

---

[1] 250 Ga. App. 555, 558-559 (1) (552 SE2d 513) (2001).
[2] 272 Ga. 272 (528 SE2d 250) (2000).
[3] OCGA § 42-9-42 (a).

part of any deal reached between the accomplice/witness and the State. Moreover, this case is not about the possibility of parole. Cruz had already pled guilty and been sentenced before he testified; Perez merely sought to reveal the much larger mandatory sentence Cruz avoided by testifying against him.

2. Perez claims that the trial court erred by allowing the State to introduce evidence of his character in three separate instances: (1) the State's opening argument; (2) DEA Task Force Agent Tysver's testimony; and (3) a tape-recorded conversation between Cruz and the informant, which involved the informant setting up the drug purchase with Cruz and included two brief references to Perez. We find that Perez has waived his right to review of these claims.[4]

(a) During opening arguments, the prosecutor told the jury that Cruz would testify that "these drugs belonged to Pedro Perez, they're in business together." Pretermitting whether the statement was improper, we find that Perez waived this issue by failing to object to the statement in the trial court.[5]

(b) On direct examination, Tysver testified that "[t]he confidential informant had told us that he had gotten this quantity [of drugs] before from Pedro [Perez]." The statement was clearly objectionable, but Perez made no objection. Later in his testimony, Tysver made another objectionable comment, stating that "[t]he confidential informant had told us when he previously dealt with Pedro [Perez] that [Perez] never counted the money." Again, Perez raised no objection. When the court announced that it was time for a lunch break, Perez's counsel moved for a mistrial based on Tysver's comments. The court denied the motion as untimely, recalling that after the objectionable comments were made, "the State went on to at least two other subjects. . . . It was at least five or six minutes until the State suggested that we break for lunch. . . . And I broke for lunch and then, and only then, did you make a motion for mistrial."

"To preserve a motion for mistrial for appellate review, the motion must be made contemporaneously with the objectionable testimony. [Cits.]"[6] Perez's motion for mistrial was not timely and review of its denial was waived because it was not made contemporaneously with the objectionable testimony.

We note that "[i]n exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the

---

[4] Perez alludes to a claim of ineffective assistance of counsel in his argument, but failed to include such a claim in his enumeration of errors. Given our holding in Division 1, we need not address this claim.

[5] *Bailey v. State*, 273 Ga. 303, 306 (4) (540 SE2d 202) (2001).

[6] *Gilliam v. State*, 240 Ga. App. 158, 159 (1) (522 SE2d 766) (1999).

errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings."[7] Given our holding in Division 1, we need not determine if the objectionable comments should be reviewed under this plain error standard.

(c) Perez asserted a hearsay objection to the tape-recorded conversation between Cruz and the informant, which we review in Division 3, infra. But Perez never objected to or made a motion to exclude the tape recording because it impermissibly placed his character in issue. As a result, he cannot raise that objection for the first time on appeal.[8]

3. "[T]he statements made by [Cruz] in the recorded call were admissible under the exception to the hearsay rule recognized by OCGA § 24-3-5" because at the time of the call, the conspiracy was still pending between Perez and Cruz to commit the trafficking offense for which they were eventually arrested.[9] Even though the informant was not a co-conspirator, his statements "in the recorded call would be admissible as part of reciprocal and integrated utterances between him and [Cruz], for the limited purpose of putting [Cruz's] responses in context and making [Cruz's] statements intelligible to the jury and recognizable as the statements of a co-conspirator. [Cit.]"[10] The trial court did not err by admitting the tape recording.

*Judgment reversed. Blackburn, C. J., Johnson, P. J., Miller, Ellington and Mikell, JJ., concur. Pope, P. J., Smith, P. J., Ruffin and Barnes, JJ., concur and concur specially. Andrews, P. J., and Eldridge, J., dissent.*

RUFFIN, Judge, concurring specially.

I concur fully with all that is said by the majority. I write separately merely to undergird the important right at stake — the constitutional right to confront one's accusers.

Wisdom does not greet us at the door of legal issues. For accurate and adequate disposition of issues, we look first to precedent. Failure to adhere to precedent, without a rational basis, creates judicial uncertainty. And we can neither risk nor condone judicial uncertainty, which not only risks institutional uncertainty, but also uncertainty in the law itself. Accordingly, stare decisis should govern. Nothing has happened between our decision in *Vogleson v. State*[11] and our decision today that warrants a departure from our earlier

---

[7] (Citations and punctuation omitted.) *Almond v. State*, 180 Ga. App. 475, 480 (349 SE2d 482) (1986) (on motion for rehearing).

[8] *Howard v. State*, 233 Ga. App. 724, 729 (5) (505 SE2d 768) (1998).

[9] *Bundrage v. State*, 265 Ga. 813, 814 (2) (462 SE2d 719) (1995).

[10] Id.; but see id. at 817-818 (Sears, J., concurring specially).

[11] 250 Ga. App. 555 (552 SE2d 513) (2001).

opinion. Indeed, the dissent's rationale is no more compelling now than when we met it in *Vogleson*.

I remain steadfast in my belief that a defendant's right to a sifting cross-examination of his accusers includes the ability "to establish the exact nature and extent of any bias on the part of a State's witness, which includes the ability to delve into the details of the deal reached with the State."[12] And the dissent's argument does nothing to dissuade me. Rather, it clearly solidifies my views.

The dissent hinges upon the assertion that the testifying co-defendant's *actual* prison time is an unknown. Thus, the dissent reasons, the specific number of years in prison "saved" by that co-defendant is misleading. What the dissent fails to recognize, however, is that evidence regarding the *actual* number of years subtracted from a mandatory sentence in exchange for the testimony of a co-defendant is not offered to show how many years that witness will *actually* serve in prison. Rather, it provides an objective and accurate benchmark for jurors, who are then charged with determining whether the deal that the witness struck with the state was sufficiently lucrative to render that witness's testimony less creditworthy. And, as in *Vogleson*, I do not believe that oblique references to "lengthy sentences" sufficiently inform jurors regarding possible bias. Indeed, what constitutes a lengthy sentence is inherently subjective and likely varies considerably depending upon the age and experience of each individual juror.

With ardor amiss, the dissent firmly focuses on so-called "juror deception." In so doing, the dissent either fails or refuses to grasp the crux of the issue. Accordingly, I believe that the dissent's rationale is fundamentally flawed. The two competing interests at issue both in *Vogleson* and here are: (1) the defendant's right to thoroughly cross-examine an accomplice witness; and (2) the defendant's right to a bifurcated trial in which his punishment is not addressed until his guilt is established. The sole reason for refusing to admit evidence of the possible punishment faced by the co-defendant is that it necessarily raises the issue of the *defendant's* possible punishment.[13] If, as the dissent contends, the *actual* sentence is a complete unknown, then why the prohibition against injecting the sentence faced by the defendant? Surely the Board of Pardons & Paroles is just as likely to reduce the sentence of the defendant as well as that of the co-defendant. Accordingly, if the dissent's reasoning is accepted, there is no reason for excluding evidence of the sentence faced either by the defendant or the co-defendant. It follows that there is even less rea-

---

[12] Id. at 563 (Ruffin, J., concurring specially).
[13] See *Whitlock v. State*, 239 Ga. App. 763, 765-766 (2) (521 SE2d 901) (1999).

son to prohibit a defendant from cross-examining the testifying accomplice.

Contrary to the dissent's position, however, the sentence is not an unknown quantity — it is a concrete number. Although that number may not translate into the exact number of years a defendant may actually serve, it nonetheless provides jurors an accurate benchmark. If this were not the case, there would be no need for a bifurcated trial, which "was created to withhold matters inadmissible on the issue of guilt or innocence from the jury until that issue has been determined."[14] Inherent in OCGA § 17-10-2, the statute establishing the bifurcated procedure, is the premise that the introduction of a defendant's possible sentence is potentially prejudicial. Even if such sentence is not exact, it is not, as the dissent would have us believe, meaningless — either to the defendant or to the testifying co-defendant. And, if a defendant chooses to elicit such potentially prejudicial testimony from the co-defendant in the hopes of establishing bias, the defendant should retain the right to make such choice.

In the theater of the judiciary, where life, liberty, and property are at stake, no person should be allowed to pit his self-interest against that of another without the severest scrutiny. Here, the dissent would allow a testifying co-defendant to act in his self-interest by cooperating with the State, without allowing the defendant to fully scrutinize that interest. The treachery of this error lies in the tragedy of its truth, that is: self-interest versus self-interest. The dissent, with all of its celerity, continues to move in a different and distant direction. But our constitution protects one irrespective of crime or creed, piety or position, wit or wealth.

The dissent urges us to employ both reason and the law. However, I find the dissent's position unreasonable and contrary to law. As that judicial cognoscenti, Oliver Wendell Holmes, Jr., said, "[t]he life of the law has not been logic: it has been experience."[15] Another sage, Benjamin N. Cardozo, reminds us from the past,

> [t]he law has "its epochs of ebb and flow." One of the flood seasons is upon us. Men are insisting, as perhaps never before, that law shall be made true to its ideals of justice. Let us gather up the driftwood, and leave the waters pure.[16]

Our reasoning in *Vogleson* was sound, and our opinion there should remain safe. And, as for the law, *Vogleson* remains the law

---

[14] *Eberheart v. State*, 232 Ga. 247, 253 (5) (206 SE2d 12) (1974).

[15] Holmes, Selections from the Common Law, *The Mind and Faith of Justice Holmes* (Random House 1943), 51.

[16] Cardozo, A Ministry of Justice, 35 Harv. L. Rev. 113, 126 (1921).

and should be followed consistent with stare decisis. The waters are pure, and we should leave them so. Hence, I concur fully with the majority.

I am authorized to state that Presiding Judge Pope, Presiding Judge Smith and Judge Barnes join in this concurrence and special concurrence.

ELDRIDGE, Judge, dissenting.

This Court continues to tread a wrong path only recently forged in *Vogleson v. State*.[17] The wrong created by *Vogleson* can be corrected. However, to do so would require quieting the roar of "Sixth Amendment Rights!" that accompanied the *Vogleson* decision, a din that — when improperly applied as in *Vogleson* — is superficial.[18] Instead, I urge the employment of reason — and the law.

1. In Perez's case, as in *Vogleson*, informing the jury of the statutory sentence an accomplice avoided by pleading to less than the indicted offense also informs the jury of the statutory sentence the *defendant* is facing under the indicted offense — if the jury convicts him. Every jury, composed of ordinary human beings, feels the pressure that accompanies its duty to convict when the evidence so demands. Such pressure can only increase with the knowledge of the statutory sentence to be imposed on a defendant — if the jury convicts him. It is for this reason, a defense attorney may want sentencing information to go before the jury, hoping to play upon emotions regardless of the facts. And it is for this same reason the statutory sentence authorized by conviction has never been permitted to go before the jury during guilt/innocence deliberation: "injection of sentence in a jury's deliberation as to guilt or innocence is improper."[19] This is because the sentence carried by a particular crime is completely irrelevant with regard to whether a defendant actually committed the crime. Such principle of law has deep roots which the majority appears completely willing to abandon.[20]

Because *Vogleson* represents a stark abandonment of stare decisis, it should be overruled. In doing so, this Court should adhere to

---

[17] 250 Ga. App. 555 (552 SE2d 513) (2001), cert. granted, Case No. S01C1642, February 4, 2002.

[18] Even the most important of our constitutional protections can be employed in empty rhetoric.

[19] *Vogleson v. State*, supra at 564 (3) (Eldridge, J., dissenting), citing *Green v. State*, 206 Ga. App. 539, 541 (2) (426 SE2d 65) (1992).

[20] *Bellamy v. State*, 272 Ga. 157, 159 (4) (527 SE2d 867) (2000); *Harris v. State*, 234 Ga. 871, 873 (218 SE2d 583) (1975); *Ford v. State*, 232 Ga. 511, 518 (14) (207 SE2d 494) (1974); *Moore v. State*, 228 Ga. 662, 665 (5) (187 SE2d 277) (1972); accord *Fletcher v. State*, 197 Ga. App. 112, 113 (3) (397 SE2d 605) (1990); *Lewis v. State*, 158 Ga. App. 575 (281 SE2d 318) (1981); *Evans v. State*, 146 Ga. App. 480, 483 (2) (246 SE2d 482) (1978); *Hill v. State*, 144 Ga. App. 259 (2) (241 SE2d 44) (1977); *Mayo v. State*, 139 Ga. App. 520 (1) (229 SE2d 16) (1976).

the Supreme Court's decision in *Hodo v. State*.[21] When a defendant is otherwise permitted to thoroughly explore an accomplice's deal with the State as a motivation for testifying, the refusal to permit conjecture about specific penalties imposed or to be imposed does not amount to an abuse of the trial court's discretion.[22]

2. Also, in *Vogleson* and now here, this Court endorses a strategy which misleads a jury into believing that the statutory sentence authorized by an indicted offense is identical to the amount of "prison time" an accomplice avoided by pleading to a lesser offense and testifying for the State. As was stated in *Vogleson*,

> the trial court completely precluded any testimony regarding the sentence [the accomplice-witness] would have received if he had not reached a deal with the State and had been convicted of the crimes for which he was indicted. By doing so, the trial court prevented the jury from considering the most important aspect of [his] deal — *how much prison time he was avoiding by agreeing to cooperate with the State*.[23]

*Vogleson* held that it is proper to inform a jury on cross-examination that "the accomplice-witness 'saved himself' a *minimum* of 15 years by virtue of reaching a deal with the State."[24] And, again here, the majority reiterates this principle by holding that a defense attorney may put before the jury "the amount of prison time the co-defendant or accomplice would avoid by agreeing to cooperate with the State and testify against the defendant."

But, this Court is well aware that the amount of prison time "saved/avoided" by Cruz's plea cannot be known and is *not* the equivalent of the statutory sentence carried by the indicted offense. The State Board of Pardons & Paroles determines the amount of prison time on a sentence imposed for most offenses, including nonviolent crimes and drug offenses with "mandatory" sentences, as here and in *Vogleson*.[25] In fact, in the vast majority of cases, the amount of actual prison time is considerably less than the sentence authorized

---

[21] 272 Ga. 272, 274 (4) (528 SE2d 250) (2000).

[22] *Whitlock v. State*, 239 Ga. App. 763, 765-766 (2) (521 SE2d 901) (1999); *Ross v. State*, 231 Ga. App. 506, 509 (3) (499 SE2d 351) (1998).

[23] (Emphasis supplied.) *Vogleson v. State*, supra at 558 (1).

[24] (Emphasis in original.) Id. at 562 (Ruffin, J., concurring specially).

[25] See *Swantner v. State*, 244 Ga. App. 372, 375 (2) (b) (535 SE2d 343) (2000) (OCGA § 17-10-6.1 "provides for mandatory minimum sentences and forbids pardon, parole, or first offender status for certain 'serious violent felonies,' but not for drug trafficking."); see also *Mann v. State*, 273 Ga. 366 (541 SE2d 645) (2001); *Norwood v. State*, 249 Ga. App. 507 (548 SE2d 478) (2001) (specific sentencing provisions in statutory offenses prevail over mandatory sentencing provisions in recidivist statute at OCGA § 17-10-7 so that the trial

by the indicted offense.[26] In this case, for example, Cruz will be eligible for parole after serving five years and Perez will be eligible for parole after seven years (the same scenario as *Vogleson*).[27] So, Cruz "saved himself" two years of prison time before the possibility of release, not the *"minimum of 15 years"* the specific statutory sentence — and *Vogleson* — would allow the jury to believe as a motivation for Cruz's testimony.[28] Obviously, the amount of prison time avoided by a plea is speculative and conjectural only.

To allow a jury to believe that the sentence authorized by the indicted offense corresponds to the amount of "prison time" an accomplice avoided by pleading to a lesser offense is completely misleading. And why this Court continues to endorse such deception is a mystery. But clearly, in these circumstances, the State should be allowed to rehabilitate such misrepresentation on redirect. Under parole guidelines in most cases, an accomplice is not facing the amount of prison time authorized by the indicted offense; he knows he is not facing such prison time; and so avoiding such prison time cannot be the "motivation" for his testimony.[29] If exploring an accomplice's "motivation" for testifying is the reason for the majority's decision, then the accomplice's understanding of the prison time he *actually* faces under the indicted offense should be put before the jury as his "motivation" — not merely the statutory sentence carried by the indicted offense. Of course, such questioning will also inform the jury that the defendant does not face the amount of prison time authorized by the indicted offense. But misrepresentation of an accomplice's motive to

---

court retains discretion to impose any sentence within the mandatory minimum and the statutory maximum range and is not bound by the recidivist statute's mandatory provisions).

[26] OCGA §§ 42-9-40; 42-9-42; 42-9-45; 42-9-46; see *Vargas v. Morris*, 266 Ga. 141, 142 (2) (465 SE2d 275) (1996); see also *Charron v. State Bd. of Pardons & Paroles*, 253 Ga. 274 (319 SE2d 453) (1984) (OCGA § 42-9-46 authorizes the Parole Board to consider an inmate for parole before the inmate has served the minimum time specified in § 42-9-45).

[27] OCGA § 42-9-45 (b), (f).

[28] See OCGA §§ 17-10-6.1; 17-10-7; see also *Freeman v. State*, 264 Ga. 27 (440 SE2d 181) (1994); compare *Hernandez v. State*, 244 Ga. App. 874, 876 (537 SE2d 149) (2000) (evidence of a mandatory sentence is not error so as to demonstrate a "manifest necessity" for mistrial).

[29] Indeed, the Parole Board's guidelines are often an essential part of a defendant's decision to plead guilty. See, e.g., *Swantner v. State*, supra at 375-376; *Crabbe v. State*, 248 Ga. App. 314 (546 SE2d 65) (2001) (defendant received ineffective assistance of counsel because of erroneous advice about parole eligibility); see also *Williams v. Duffy*, 270 Ga. 580, 581-582 (1) (513 SE2d 212) (1999) (failure to advise of parole guidelines does not render guilty plea invalid); *State v. Colack*, 273 Ga. 361 (541 SE2d 374) (2001) (failure to inform defendant of "collateral factor" such as deportation renders counsel ineffective); *Mann v. State*, supra at 367 (1) (defendant rejected the plea bargain due to his trial counsel's failure to inform him that the only sentence he could receive if convicted was life without parole). Imparting incorrect information about parole can serve as a basis for ineffective assistance of counsel, because the subsequent guilty plea based on incorrect parole information was not freely and voluntarily made. *Crabbe v. State*, supra; *State v. Colack*, supra.

testify clearly merits correction. Invoking the Sixth Amendment cannot legitimate misrepresentation. Indeed, to me, the correction of such misrepresentation presents a compelling and logical reason to overrule *Vogleson*.

Again, in overruling *Vogleson*, we should adhere to the Supreme Court's decision in *Hodo v. State*, supra. When a defendant is otherwise permitted to thoroughly explore an accomplice's deal with the State as a motivation for testifying, the refusal to permit conjecture about specific penalties imposed or to be imposed does not amount to an abuse of the trial court's discretion. In so finding, we establish the continuity in the law that concerns us all.

I am authorized to state that Presiding Judge Andrews joins in this dissent.

DECIDED MARCH 27, 2002 —
RECONSIDERATION DENIED APRIL 12, 2002 —

*Martin M. del Mazo*, for appellant.
*Patrick H. Head, District Attorney, Andrew J. Saliba, Amelia G. Pray, Assistant District Attorneys*, for appellee.

