A98A0615. ROSS v. THE STATE.
(499 SE2d 351)

BLACKBURN, Judge.

Glenwood Ross appeals his conviction for armed robbery. Ross contends that the trial court erred in its recharge to the jury, that his Sixth Amendment right to confront the witnesses against him was abridged, and that there was insufficient evidence presented at trial to support his conviction.

1. "On appeal from a criminal conviction, the evidence must be

viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Punctuation omitted.) *Jessup v. State,* 224 Ga. App. 176, 177 (480 SE2d 232) (1996).

At trial, the victim testified that prior to exiting her car to go to her hotel room, she saw a small white car containing three black males cruising the hotel parking lot and she had waited to exit her car until the white car was out of sight. Thereafter, as she was ascending a flight of stairs to her room, a light-skinned black male holding a gun and wearing a white shirt, sweat shirt, dark pants, and white tennis shoes demanded her purse. The victim threw down everything she was carrying, whereupon the perpetrator picked up her purse and ran to the back door of a small white car. The perpetrator got into the back seat of the car behind the driver, the car hesitated and then drove off.

Officer James Chambers with the DeKalb County Police Department testified that shortly after receiving information over his radio regarding the armed robbery, he began following a small white car containing three black males traveling away from the scene of the robbery. Officer Chambers noted that the back seat passenger slouched down in his seat and looked back several times. Upon stopping the vehicle, the defendant exited from the back seat. A search of the vehicle revealed, among other things, the victim's purse, the victim's gun, and the perpetrator's gun. The guns were found under the front seat, one on the driver's side and one on the passenger side. Both guns were accessible from the front or back seats.

His co-defendants testified that Ross got out of the car at the hotel, committed the robbery, and got back into the car with a purse and an extra gun. The co-defendants also testified that they pled guilty to robbery for their connection with the present case. Although Ross denied committing the robbery and contended that one of his co-defendants committed the robbery, Ross was the only person in the car wearing a sweat shirt.

Having viewed the evidence in the light most favorable to the verdict, we find that sufficient evidence was presented to authorize the jury's verdict pursuant to the *Jackson v. Virginia* standard.

2. In several enumerations of error, Ross contends that the trial court erred in its recharge to the jury. Ross asserts that the trial court failed to fully instruct the jury on a point of law, that his constitutional rights were violated when the trial court denied his motion

for mistrial based on the inadequate jury instructions, and that the trial court erred in denying his motion for new trial due to the inadequate instructions.

After jury deliberations had begun, the jury sent several questions to the judge: "Is there a difference between holding the gun and being on the scene, with knowledge of crime, but no gun, for armed robbery charge? . . . Is 'a party to' considered guilty of armed robbery? If so, what does it take to be 'a party to,' knowledge only, intent, counsel, other? . . . May we see a copy of the Judge's charge to the jury." After hearing argument, the trial court recharged the jury on parties to a crime and knowledge. The trial court also supplied the jury with a copy of the entire charge. Defense counsel stated that he was satisfied with the recharge.

After more deliberation took place, the jurors requested the legal definition of "participation" and "conspirator." The trial court charged the jury: "First of all, participation has no particular legal definition. Participation means what you collectively agree that participation means. It is just a common English word, and the definition of that is just the common English definition of participation. There is no legal definition for me to give you on that word. As to the word conspirator, the court realizes that I inadvertently included in my charge a provision regarding conspirator. It appears on page 6 of the charge. Conspiracy is not involved in this case. There is no charge of conspiracy in this case, so you're to disregard any reference to any provision about 'or was a conspirator in.' That does not apply in this case. Okay?" Thereafter, defense counsel stated that he had no exception to the court's recharge.

Deliberations continued until 5:14 that evening when the court recessed for the weekend. On Monday morning, defense counsel requested that the trial court recharge the jury on "knowingly" and "intentionally" as they modified the word "participate" in the trial court's original charge. The trial court denied defense counsel's motion finding that the mere presence charge coupled with the knowledge charge addressed counsel's concerns. The trial court then denied counsel's motion for a mistrial which counsel based on the trial court's failure to grant the requested recharge.

"It is within the discretion of the trial court to give or not to give unrequested additional instructions when the jury requests a recharge on a particular point, *Patterson v. State*, 264 Ga. 593 (2) (449 SE2d 97) (1994), and the discretion includes the giving of unrequested instructions not contained in the trial court's original charge. *Taylor v. State*, 169 Ga. App. 842 (2) (315 SE2d 661) (1984)." *Miner v. State*, 268 Ga. 67 (2) (485 SE2d 456) (1997). Based upon the facts that the defense agreed to the recharges as given, only later requesting that the trial court instruct the jury on matters not requested

and that the charge as a whole addressed the defendant's concerns, we find that the trial court did not abuse its discretion in denying defendant's motion to provide the jury with unrequested additional instructions. Accordingly, the trial court also did not abuse its discretion in also denying the defendant's motion for mistrial based upon the court's failure to reinstruct as requested.

During Ross' motion for new trial, three jurors testified that they were confused about the definition of knowledge and participation with regard to being a party to a crime. Ross asserts that based upon this testimony, a new trial should have been granted. However, OCGA § 17-9-41 provides that "affidavits of jurors may be taken to sustain but not to impeach their verdict." As in *Moore v. State*, 224 Ga. App. 797, 801 (6) (481 SE2d 892) (1997), the jurors' testimony was inadmissible to impeach the jury's verdict. Therefore, the trial court properly denied Ross' motion for new trial on this issue.

3. In two enumerations of error, Ross contends that the trial court committed reversible error by disallowing any testimony regarding the mandatory minimum sentence for armed robbery. Ross asserts that this restricted his right to a full cross-examination of a co-defendant and abridged his ability to bring up the co-defendants' motive to lie in opening statements and to argue same in his closing argument.

Ross' arguments are without merit as the transcript is clear that the trial court restricted him only from asking questions couched in terms of "mandatory minimum sentence." Ross was free to question the co-defendants as to their understanding of the possible sentence, as long as the jury was not informed of the mandatory minimum sentence for armed robbery. Furthermore, when defense counsel was questioning one of the co-defendants, the following testimony took place in front of the jury: "Q. What did you think you were looking at on an armed robbery charge? A. Ten years mandatory. Q. You didn't want to go to jail for the armed robbery sentence? A. No. Q. So, you pled to robbery and you got seven years? A. Yes." Therefore, Ross did question the co-defendants regarding their motives to lie, and he could have made such argument in closing had he so chosen.

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED MARCH 10, 1998 —
RECONSIDERATION DENIED MARCH 24, 1998 ▮

*Tony L. Axam*, for appellant.
*J. Tom Morgan, District Attorney, Sheila A. Connors, Assistant District Attorney*, for appellee.