## A98A1881. COPELAND v. THE STATE.
(510 SE2d 124)

Judge Harold R. Banke.

Robert J. Copeland, Jr. was convicted of homicide by vehicle, hit and run, and driving under the influence of alcohol. On appeal, Copeland enumerates three errors.[1]

The evidence, when viewed in a light most favorable to the verdict, showed that Copeland and a co-worker, Richard Brink, left work at about 1:30 p.m. on December 24 and stopped for drinks at a down-

---

[1] Copeland filed an enumeration of errors consisting of three purported errors. In a supplemental brief, Copeland attempted to enlarge his enumeration to include several additional errors. This he cannot do. *Sentry Ins. v. Majeed,* 194 Ga. App. 276, 277 (1) (390 SE2d 269) (1990); OCGA § 5-6-40.

town bar. After several hours of drinking, Copeland, driving a red Pontiac Grand Am, dropped Brink and another man off at a bus station.

Eyewitness Joseph Guerin testified that at about 6:30 p.m., while traveling in the extreme right lane he was passed on I-85 north on the left by a red car which then abruptly swerved to the right and slammed into a gray Hyundai Excel that had stopped in the emergency lane. The driver, Michelle Montgomery, had halted so that her passenger could fix a balky window. Her passenger, who was outside the vehicle at the time of impact, was not injured. When Guerin stopped to render aid, Montgomery was unconscious and gasping for air. She later died from massive internal bleeding. Guerin noticed a white male at the scene whose speech was slurred and who appeared dazed. Although Guerin provided police with the man's description, he was unable to identify Copeland in a photographic array.

Another motorist, Irene Briggs, stopped almost immediately and went over to the red car, a Pontiac Grand Am, and found Copeland, still seated behind the steering wheel, dazed, smelling of alcoholic beverages, and in her opinion, drunk. When Briggs asked Copeland if he was alright, he said he was and that he had been driving. A few minutes later, Copeland denied being the driver. According to Briggs, Copeland had red and blurry eyes and slurred speech. Copeland remained at the scene until emergency vehicles began arriving but then walked off in a northerly direction up I-85 toward the next exit, Shallowford Road. Briggs positively identified Copeland from a photographic array. At trial, Briggs testified that Copeland was the man driving the red car "without a shadow of a doubt."

A computer check of the Pontiac Grand Am's tag showed that the vehicle was registered to Copeland, who lived at an address off the Shallowford exit. Within 15 minutes of the collision, Officer Ray Davis was dispatched to Copeland's address and interviewed his roommate, Wesley Doyle. Doyle confirmed that the Pontiac belonged to Copeland and said that he had gone to work that morning and not yet returned. Doyle provided a description of Copeland and agreed to notify police if he heard from Copeland. At about 7:20 p.m., Doyle contacted 911 to report that Copeland had called him from a Shell station at the Shallowford exit on I-85 and asked him for a ride, claiming that his car had been stolen from a bus station in downtown Atlanta.

Officer Davis intercepted Copeland at the service station pay phone. Copeland's face appeared flushed, he was unsteady on his feet and swaying, his eyes were glassy and bloodshot, his speech was slurred and he smelled strongly of alcoholic beverages. Copeland claimed that his car had been stolen and that he had hitchhiked to that exit. Copeland denied being involved in the accident and refused

to submit to a blood test saying, "I know I have been drinking." Investigators were unable to detect any damage to the steering column or ignition switch or to find any evidence that Copeland's vehicle had been stolen or tampered with. *Held*:

1. The evidence satisfies the strictures of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Notwithstanding Copeland's claim to the contrary, the evidence was sufficient to establish that he was, in fact, the driver of the car and that he was under the influence of alcohol to the extent that he was a less safe driver. *Blackwell v. State*, 180 Ga. App. 253, 255 (2) (349 SE2d 13) (1986).

When last seen by a co-worker with whom he had been drinking, Copeland was driving his own car. No evidence indicated that this vehicle had been stolen or tampered with or that it had been reported stolen. Briggs, who arrived on the crash scene almost immediately, spoke with Copeland while he was still seated behind the wheel and Copeland admitted to her he had been driving. *McLarty v. State*, 176 Ga. App. 433, 435 (2) (336 SE2d 273) (1985).

Similarly, the evidence was sufficient to sustain the conviction for driving under the influence of alcohol. A witness identified Copeland as the driver of the vehicle involved in the fatality. Although denying his involvement in the hit and run incident, Copeland admitted to the investigating officer that he had been drinking. According to testimony elicited from three witnesses, Copeland appeared unsteady on his feet and was swaying, acted dazed, had bloodshot or bleary eyes, smelled of alcoholic beverages, and slurred his speech. See *Frye v. State*, 189 Ga. App. 181 (375 SE2d 101) (1988).

2. Copeland contends that the trial court impermissibly admitted three statements into evidence which were not part of the res gestae.

(a) Copeland claims that Briggs improperly testified that Crawford (the passenger in the victim's car) said that they had just pulled over when "this car came and slammed them." A trial court's determination that evidence is admissible as part of the res gestae will not be disturbed unless that finding is clearly erroneous. *Stovall v. State*, 216 Ga. App. 138, 139 (1) (453 SE2d 110) (1995). Here, Briggs testified that the passenger was frantic, hysterical, and " 'just screaming.' And, you know, he told me that. . . ." This statement, precisely the kind of excited utterance contemplated by OCGA § 24-3-3, was made almost immediately after the crash as a spontaneous reaction to a startling event rather than as the result of reflective thought. *House v. State*, 252 Ga. 409, 410 (2) (314 SE2d 195) (1984).

Having held that this evidence was properly admitted as res gestae, we need not address Copeland's contention that the State's efforts to locate the declarant were inadequate. *Stovall*, 216 Ga. App. at 139 (1).

(b) Copeland claims that the testimony of Detective Kaulback violated his confrontation rights in that Kaulback testified that Guerin and Briggs gave consistent descriptions of the driver. Even assuming arguendo that Kaulback improperly offered her opinion that the two descriptions were "consistent," Copeland cannot show the requisite harm. Kaulback, Guerin, and Briggs were subjected to thorough and sifting cross-examinations, and Copeland was able to address any inconsistencies in their descriptions and to attack Kaulback's conclusion. *Robinson v. State*, 212 Ga. App. 613, 616 (2) (442 SE2d 901) (1994) (harm and error must be shown for reversal).

3. Copeland waived his right to assert that his trial counsel was ineffective. *Glover v. State*, 266 Ga. 183, 184 (2) (465 SE2d 659) (1996) (failure to seize opportunity to raise issue of ineffectiveness at earliest practicable opportunity creates procedural bar to assert the issue later). Copeland's failure to raise the ineffectiveness issue in a motion for new trial after he obtained appellate counsel resulted in a waiver of any ineffectiveness issues. Id. *Clay v. State*, 232 Ga. App. 541, 542 (502 SE2d 267) (1998).

*Judgment affirmed. Johnson, P. J., and Smith, J., concur.*

DECIDED DECEMBER 4, 1998.

*Alan Z. Eisenstein, Kendal D. Silas, Konny L. Mitchell*, for appellant.

*J. Tom Morgan, District Attorney, Jeanne M. Canavan, Robert M. Coker, Assistant District Attorneys*, for appellee.