## A01A0485. VOGLESON v. THE STATE.
(552 SE2d 513)

PHIPPS, Judge.

A jury found Owen Vogleson guilty of trafficking in cocaine and violating the Georgia Controlled Substances Act for possession of cocaine with intent to distribute. His co-defendant negotiated a reduction in sentence in exchange for his testimony against Vogleson. Vogleson claims that the trial court erred by denying him his constitutional right to cross-examine his co-defendant[1] about the mandatory minimum sentence the co-defendant was facing before he agreed to testify against Vogleson. He also claims that the only evidence linking him to the crimes was the uncorroborated testimony of his co-defendant, which was insufficient to support his convictions. Although we find that the evidence was sufficient to support Vogleson's convictions, we reverse because we find that the trial court erred by limiting Vogleson's cross-examination of his co-defendant.

---

[1] We affirmed the conviction of his co-defendant. *Wilson v. State*, 249 Ga. App. 560 (549 SE2d 418) (2001).

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence.[2] Viewed in that light, the evidence shows that on April 26, 1999, DeKalb County Police Detective Franklin received a tip from a confidential informant that a white Jeep Cherokee, license tag number 324 JLC, could be found immediately in the area of Redan Road and Covington Highway and that the Jeep would be carrying a large amount of illegal drugs. The informant told Franklin that the Jeep would be occupied by two black males. When he received the tip, Franklin notified uniformed officers Becker and Frank that he would be moving into the area.

When he reached the area, Franklin observed the Jeep and was able to confirm the license tag number, the race and gender of the driver and the race of the passenger. The passenger had his seat reclined, making it difficult for Franklin to determine his gender. Franklin eventually was able to determine that the passenger was male. Franklin testified that the driver repeatedly looked into his side view and rear view mirrors and turned around in his seat to watch the vehicles following him. Franklin notified Officers Becker and Frank of his observations and of the Jeep's location.

Officer Becker located the Jeep, drove behind it and activated his blue lights. When the Jeep stopped, Becker, speaking through his public address system, asked the driver, whom he identified as Wilson, to get out and go to the rear of the vehicle. Wilson complied with that request and with Becker's request for his driver's license. Becker asked Wilson if there were any guns in the vehicle, and Wilson said, "yes." Wilson told Becker that there was a gun under the driver's seat. After patting Wilson down, Becker went to the driver's side of the vehicle, looked under the driver's seat and found a gun and a bag of marijuana. When Wilson acknowledged that the gun and marijuana belonged to him, Becker placed him under arrest.

Becker then approached the passenger, whom he identified as Vogleson, and instructed him to exit the Jeep. After Vogleson exited, Becker asked Officer Frank to conduct an open air search of the vehicle. Frank walked his dog (trained in the detection of narcotics) around the outside of the vehicle. The dog "alerted" on the front driver's side and the front passenger's side of the vehicle and again in those areas and the backseat when he entered the vehicle. The officers found two bags containing almost two kilograms of cocaine on the front passenger floorboard and a large amount of marijuana under the backseat.

At trial, Wilson testified to the following. His involvement in the

---

[2] *Newman v. State*, 233 Ga. App. 794 (1) (504 SE2d 476) (1998).

buying and selling of cocaine was limited to connecting suppliers with potential purchasers, thereby earning a "finder's fee." Vogleson had cocaine he needed to sell, and a friend (the informant) had told Wilson he was interested in buying up to five kilograms. On April 26, 1999, Wilson and Vogleson met to sell the cocaine. At Vogleson's suggestion, they went to a restaurant on Covington Highway to get something to eat. Vogleson went into the restaurant and talked to someone who had entered the restaurant carrying a box. When Vogleson exited the restaurant, he was carrying a white plastic grocery bag, which contained food and two kilograms of cocaine. In the car, Vogleson gave Wilson the food, showed him the cocaine and placed the bag containing the cocaine under his leg. They then left the restaurant and headed in the direction of Wilson's friend's house to sell him the cocaine.

1. Vogleson claims that the trial court committed reversible error by denying him the right to cross-examine Wilson about the mandatory minimum sentence for trafficking in cocaine. He argues that he was denied his constitutional right to explore Wilson's bias as a witness.

On direct examination, Wilson admitted that he received a deal from the State in exchange for his testimony in this case, including a recommendation for a reduction in sentence that would require him to serve ten years in prison. On cross-examination, the following transpired:

> VOGLESON'S ATTORNEY: And so you are going to plead guilty to a reduced charge of possession with intent to distribute the cocaine?
> WILSON: Yes.
> VOGLESON'S ATTORNEY: But you want this jury to believe that the cocaine belonged to Mr. Vogleson?
> WILSON: That's who it belonged to. . . .
> VOGLESON'S ATTORNEY: By pleading guilty to the possession with intent to distribute you save yourself from getting a mandatory —.
> THE COURT: We don't talk about mandatory sentences. We don't talk about any of that stuff.
> VOGLESON'S ATTORNEY: Okay. You are saving yourself 15 years, aren't you?

Before Wilson could answer, the trial judge admonished Vogleson's attorney for disregarding his instruction. Vogleson's attorney then asked additional questions on other subjects designed to explore Wilson's bias.

Vogleson argues that *Hernandez v. State*[3] requires reversal. In *Hernandez*, we held that cross-examination of an accomplice regarding the deal he had made with the prosecution, including the potential sentence he could receive and the fact that he would not be eligible for parole, was constitutionally protected because it sought to show the witness's motive, bias or interest in cooperating with the State and testifying against Hernandez.[4] The fact that he faced a sentence without eligibility for parole, or a mandatory minimum sentence, gave him much more incentive to give favorable testimony.

The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This guarantee applies to both federal and state criminal defendants.[5] Implicit in the constitutional right of confrontation is the right of cross-examination, which is an essential and fundamental requirement for a fair trial.[6]

"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested."[7] Because the exposure of a witness's motivation in testifying is an important function of the constitutionally protected right of cross-examination, the potential bias or partiality of a witness may always be explored at trial.[8] "It is especially important in a case where a witness or an accomplice may have substantial reason to cooperate with the government that a defendant be permitted to search for an agreement between the government and the witness"[9] and explore the details of any agreement.

Much of Wilson's deal with the State was revealed on direct examination. But the trial court completely precluded any testimony regarding the sentence Wilson would have received if he had not reached a deal with the State and had been convicted of the crimes for which he was indicted. By doing so, the trial court prevented the jury from considering the most important aspect of Wilson's deal — how much prison time he was avoiding by agreeing to cooperate with the State.

We think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination

---

[3] 244 Ga. App. 874 (537 SE2d 149) (2000).
[4] Id. at 876-877 (1) (c).
[5] *Pointer v. Texas*, 380 U. S. 400 (85 SC 1065, 13 LE2d 923) (1965).
[6] *Chambers v. Mississippi*, 410 U. S. 284, 295 (93 SC 1038, 35 LE2d 297) (1973).
[7] *Davis v. Alaska*, 415 U. S. 308, 316 (94 SC 1105, 39 LE2d 347) (1974).
[8] Id.
[9] (Citation and punctuation omitted.) *Hines v. State*, 249 Ga. 257, 260 (2) (290 SE2d 911) (1982).

designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." [Cit.] [Vogleson] has met that burden here: A reasonable jury might have received a significantly different impression of [Wilson's] credibility had [Vogleson's] counsel been permitted to pursue his proposed . . . cross-examination.[10]

Because the trial court denied Vogleson his constitutionally protected right to explore Wilson's motive, bias and interest in cooperating with the State and testifying against Vogleson, we reverse.[11]

We previously addressed restrictions on cross-examination of an accomplice in *Whitlock v. State*[12] and *Ross v. State*.[13] In *Whitlock*, an accomplice testified that he had pled guilty to certain charges, but had not made a deal with the State. Defense counsel wanted to show that the accomplice could have received a maximum sentence of eighty years imprisonment if he had been convicted of the crimes charged in the indictment but was given only a minimum sentence of ten years. The court allowed counsel to show the crimes with which the accomplice had been charged and the counts that were dismissed, and that he received the "minimum sentence" for the crimes to which he pled guilty even though he could have received a "substantial amount of time" on the charges. The court would not let counsel inform the jury of the lengths of the minimum and maximum sentences. We held that the limitation on cross-examination did not hamper Whitlock's ability to challenge the accomplice's credibility.[14]

In *Ross*, defense counsel elicited the fact that an accomplice was facing a mandatory sentence of ten years for armed robbery and that by pleading guilty to robbery, he was able to reduce the sentence to seven years.[15] We held that Ross's ability to question his accomplice about his motive to lie was not improperly restricted by the trial court's refusal to allow questions couched in the terms of "mandatory minimum sentence."[16]

We recognize the potential conflict between *Hernandez* on the one hand and *Whitlock* and *Ross* on the other. Because *Hernandez* more fully protects a defendant's constitutional right of confrontation, we will follow it and disapprove of *Whitlock* and *Ross* only to the

---

[10] *Delaware v. Van Arsdall*, 475 U. S. 673, 680 (106 SC 1431, 89 LE2d 674) (1986).
[11] *Hernandez*, 244 Ga. App. at 877.
[12] 239 Ga. App. 763, 765-766 (2) (521 SE2d 901) (1999).
[13] 231 Ga. App. 506, 509 (3) (499 SE2d 351) (1998).
[14] 239 Ga. App. at 766.
[15] 231 Ga. App. at 509 (3).
[16] Id.

extent they suggest that it is not reversible error to preclude cross-examination of an accomplice regarding the deal he has reached with the State, including the disparity between the sentence the State will recommend in exchange for the accomplice's cooperation and the sentence he would have received without that cooperation.

The State argues that to the extent *Hernandez* permits cross-examination regarding mandatory minimum sentences, it conflicts with the Supreme Court of Georgia's decision in *Hodo v. State*.[17] There, the court held that Hodo's constitutional right to confrontation was not violated when the trial court refused to allow him to question a State's witness about the potential sentence the witness could face if prosecuted for the criminal conduct he admitted on the stand. Hodo was permitted to ask the witness if he realized that he could be prosecuted and about any benefit he expected to receive in exchange for his testimony.

We find *Hodo* distinguishable. The witness, a drug dealer, was not involved in the crimes being tried and had not been charged with any crime. Requiring such a witness to speculate about possible punishment for crimes with which he might be charged differs from requiring an accomplice to reveal the punishment he would receive if not for his deal with the State.

The dissent takes issue with our reliance on *Hernandez* to support reversal in this case. Although the issue arose in a different context in *Hernandez,* we nevertheless held as a basis for reversal that "[f]inally, and perhaps most importantly, such cross-examination is proper because it is constitutionally protected."[18] We did not find the cross-examination was improper but held that any concerns held by the State regarding its scope could have been addressed by the court without resort to a mistrial.[19] For example, the court could have instructed the jury that the cross-examination should not be considered for purposes of determining Hernandez's guilt or innocence but only for judging the credibility of the witness. The same limiting instruction would have worked here as well.

2. We now address Vogleson's challenge to the sufficiency of the evidence. An appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[20] Under *Jackson v. Virginia*, we determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Vogleson claims that the only evidence linking him to the cocaine

[17] 272 Ga. 272, 274-275 (4) (528 SE2d 250) (2000).
[18] 244 Ga. App. at 876-877 (1) (c).
[19] Id. at 877.
[20] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

came from Wilson. In fact, Wilson's testimony was corroborated by the officers' testimony that the cocaine was discovered on the floorboard of the passenger side of the car where Vogleson was sitting. The corroborating evidence tended to show Vogleson's participation in the crimes and was therefore sufficient as a matter of law.[21] We cannot say that no rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.

*Judgment reversed. Pope, P. J., Johnson, P. J., Smith, P. J., and Barnes, J., concur. Ruffin and Miller, JJ., concur and concur specially. Blackburn, C. J., Andrews, P. J., Eldridge, Ellington and Mikell, JJ., dissent.*

RUFFIN, Judge, concurring and concurring specially.

I fully concur with both the reasoning employed and the result reached by the majority. However, in view of the significance of the constitutional right at stake — the Sixth Amendment right of confrontation — I am compelled to enter the fray to voice my concern with the dissent's position. (The reference to the dissent refers to Judge Eldridge's dissent.)

The importance of the Sixth Amendment right to confront witnesses cannot be overstated. The clarity and undeniability of that amendment are firm, and today we reaffirm our commitment to it. Embodied in this constitutional right is the ability to cross-examine one's accusers. As the United States Supreme Court has made clear, "[t]he opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers."[22] Such pointed "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested."[23] And, "while cross-examination does not guarantee truth, it will, hopefully, make untruth more difficult."[24] Given the reality that this fundamental right is integral to the truth-seeking process, we should zealously guard against its unnecessary abrogation. Popular notions to the contrary, truth still remains at the epicenter of our judicial system.

Here, the dissent states unequivocally that "[t]he injection of [sentencing] in a jury's deliberation as to guilt or innocence is improper." Context is key, and the dissent recontextualizes the sce-

---

[21] See id.

[22] (Punctuation omitted.) *Davis v. Alaska,* 415 U. S. 308, 316 (94 SC 1105, 39 LE2d 347) (1974).

[23] Id. at 316.

[24] *Farley v. State,* 225 Ga. App. 687, 696 (484 SE2d 711) (1997) (Ruffin, J., concurring specially).

nario. The cases cited by the dissent only involve the injection of the *defendant's possible punishment into the trial* — not the possible punishment of a State's witness.[25] Thus, contrary to the dissent's suggestion, there is no hard and fast rule that it is improper *to inject the issue of a witness' possible punishment.*

In two cases this Court has ruled that the trial court did not abuse its discretion in *limiting* the cross-examination of a State's witness regarding the minimum or maximum punishment that the witness avoided by striking a deal with the State.[26] This Court did so because a trial court "retains wide latitude to impose *reasonable* limits on cross-examination, based on such concerns as the prevention of prejudice and of questioning on subjects that are only marginally relevant."[27] I see no reason to limit a defendant's ability to impeach a State's witness by delving into the exact nature of the deal that the witness made with the State. Indeed, such bias in a witness "is always relevant as discrediting the witness and affecting the weight of his testimony."[28] And, unlike the dissent, I do not believe that oblique references to "lengthy sentences" carry the same weight as evidence that the accomplice-witness "saved himself" a *minimum* of 15 years by virtue of reaching a deal with the State. Accordingly, I agree with the majority that those two cases must be disapproved in order that a better, more reasonable rule be established.

The dissent is evidently troubled by the fact that, in addressing the accomplice's potential sentence had he not pled guilty, the jury would inadvertently be informed of the possible sentence that the defendant faced as both had been charged with the same crime. Indeed, I acknowledge that tension exists between the defendant's right to thoroughly cross-examine an accomplice-witness to establish bias and the defendant's right to a bifurcated trial, in which his punishment is not addressed until his guilt is established.[29] But these rights inure to the *defendant's* benefit. Thus, it should be the defendant's decision to choose to exercise one right to the detriment of another.

Even if the bifurcated trial does inure to the State's benefit, also, I do not believe that such interest justifies abrogating a defendant's Sixth Amendment right to thoroughly cross-examine the witnesses against him. Rather, I believe that "[t]he State's policy interest in

---

[25] See *Bellamy v. State*, 272 Ga. 157, 159 (4) (527 SE2d 867) (2000); *Ford v. State*, 232 Ga. 511, 518 (14) (207 SE2d 494) (1974); *Green v. State*, 206 Ga. App. 539, 541 (2) (426 SE2d 65) (1992).

[26] See *Whitlock v. State*, 239 Ga. App. 763, 765-766 (2) (521 SE2d 901) (1999); *Ross v. State*, 231 Ga. App. 506, 509 (3) (499 SE2d 351) (1998).

[27] (Emphasis supplied.) *Whitlock*, supra at 766.

[28] (Punctuation omitted.) *Davis*, supra at 316.

[29] See OCGA § 17-10-2 (a). See also *Ford*, supra.

[preserving the bifurcated process] cannot require [the] yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness."[30]

Finally, I disagree with the dissent's contention that any error was harmless. Although Vogleson's attorney did ask whether the accomplice "saved himself" 15 years by pleading guilty, the trial court did not allow the accomplice to answer the question. Even assuming that the jury could infer that the answer would have been affirmative, I do not believe a defendant should be *forced* to impeach a crucial witness inferentially. To the contrary, a defendant retains the right to establish the exact nature and extent of any bias on the part of a State's witness, which includes the ability to delve into the details of the deal reached with the State. To hold otherwise would greatly erode the effectiveness of the fundamental constitutional right of confrontation. Hence, I concur with the majority.

I am authorized to state that Judge Miller joins in this concurrence and special concurrence.

ELDRIDGE, Judge, dissenting.

1. Vogleson did not object to the trial court's ruling that he was not to go into mandatory minimum sentencing requirements. His only response to the court's ruling was to state, "Okay," and then to inform the jury anyway that Damon Wilson had saved himself 15 years by pleading to a lesser offense than trafficking. Vogleson "cannot submit to the ruling or otherwise acquiesce in the holding or response and then complain of the same on appeal; he must stand his ground."[31] There is no basis for reversal since this issue is waived.

2. The jury was informed that Vogleson's co-defendant, Wilson, received ten years to serve pursuant to a plea to a lesser offense than the trafficking for which he was co-indicted. On cross-examination, the trial court ruled only that Vogleson could not bring out the mandatory minimum sentence Wilson would have gotten for trafficking had he not pled: "We don't talk about mandatory sentences. We don't talk about that stuff."

Vogleson's lawyer, however, disregarded the trial court's ruling and stated before the jury that "You [Wilson] are saving yourself 15 years, aren't you?" The trial court did not strike the question, but reinforced defense counsel's assertion by immediately declaring before the jury that counsel had "completely disregarded" the court's

---

[30] *Davis*, supra at 320.
[31] *Wilburn v. State*, 199 Ga. App. 667, 669 (2) (405 SE2d 889) (1991). See also *Cox v. State*, 242 Ga. App. 334, 339 (10) (528 SE2d 871) (2000); *James v. Tyler*, 215 Ga. App. 479, 480-481 (451 SE2d 506) (1994); *Warsham v. State*, 200 Ga. App. 322 (2) (408 SE2d 122) (1991).

ruling not to go into the mandatory minimum sentence.

In fact, the mandatory minimum sentence for trafficking in the indicted amount of cocaine is 25 years.[32] While the majority dismisses defense counsel's question as "not evidence," that view ignores the realities of the courtroom wherein a jury can and does consider the implications contained in a statement of fact masquerading as a "question." This reality has been the basis for many a motion for mistrial, corrective instruction, and reversal.[33] No. Vogleson's lawyer rang that bell, and the average juror can add the ten years Wilson received and the fifteen years defense counsel informed them Wilson "saved himself" in order to arrive at the mandatory minimum sentence. Pretermitting error, Vogleson made his point to the jury about the discrepancy between the specific amount of time Wilson received and the specific amount of time he avoided — which point was reinforced by the trial court. Accordingly, there is no requisite showing of harm, and Vogleson's claim of error provides no basis for reversal of his criminal conviction.[34]

3. The injection of sentence in a jury's deliberation as to guilt or innocence is improper.[35] It is error to instruct the jury as to a possible sentence in a felony case before the jury has determined the question of guilt or innocence.[36] In most cases, an accomplice is indicted, either directly or as a party, for the same offenses as the defendant and is facing the same sentencing provisions for those offenses. Thus, introduction of testimony about the specific mandatory minimum sentence the accomplice avoided via a plea to a lesser offense lets the jury know the specific sentence the defendant will receive if a verdict of guilty is returned on the indicted charge.

So too, in this case, Wilson was indicted for the same trafficking offense as Vogleson. Had he not pled guilty to a lesser offense, Wilson was facing the same mandatory minimum sentence for trafficking that Vogleson faced during trial. The single cross-examination question in dispute, while in the guise of an exposé of bias, would have permitted the injection of the specific mandatory sentence for trafficking into the jury's deliberations of Vogleson's guilt or innocence of that offense. This is error.[37]

---

[32] OCGA § 16-13-31 (a) (1) (C).

[33] See, e.g., *King v. State*, 273 Ga. 258, 273 (30) (539 SE2d 783) (2000); *Goss Bros. Trucking v. Ashley*, 228 Ga. App. 354, 356 (492 SE2d 7) (1997); *Willett v. State*, 223 Ga. App. 866, 868 (1) (479 SE2d 132) (1996).

[34] *Copeland v. State*, 235 Ga. App. 682, 685 (2) (b) (510 SE2d 124) (1998). See also *Sanders v. State*, 181 Ga. App. 117, 121-122 (3) (351 SE2d 666) (1986).

[35] *Green v. State*, 206 Ga. App. 539, 541 (2) (426 SE2d 65) (1992).

[36] *Bellamy v. State*, 272 Ga. 157, 159 (4) (527 SE2d 867) (2000); *Ford v. State*, 232 Ga. 511, 518-519 (14) (207 SE2d 494) (1974).

[37] *Fletcher v. State*, 197 Ga. App. 112, 113 (3) (397 SE2d 605) (1990). See *Bellamy v. State*, supra at 159.

Further, I question the majority's contention that the *specific* amount of prison time avoided was "the most important aspect of Wilson's deal." The purpose of Vogleson's cross-examination was to demonstrate a motive for Wilson to take the stand and say damaging things about him on behalf of the State. To that end, Vogleson does not argue and nothing compels the conclusion that a reasonable jury might have received a significantly different impression of Wilson's credibility had they been informed that Wilson avoided "fifteen years," as opposed to "a very lengthy prison sentence" or "years and years of jail time." In this case, the issue is that Wilson avoided significant jail time in exchange for testimony. The issue is not the specific amount of the significant jail time he avoided. The addition of the latter information serves only to inform the jury that Vogleson will receive such jail time if convicted, even though Wilson did not. This is error.

4. Finally, there is no conflict between *Hernandez v. State*[38] and the cases sought to be disapproved by the majority.[39] In that regard, it is not only important, it is determinative to recognize the posture in which *Hernandez* came to us:

*Hernandez* was *not* an appeal from a criminal conviction with an enumeration of error claiming defendant was denied his constitutional right to a thorough and sifting cross-examination, as in this case. *Hernandez* was an appeal from the trial court's denial of a plea in bar of double jeopardy.

The issue in *Hernandez* was not the scope of the right to cross-examine, as in this case. It was whether a cross-examination question which violated a trial court's ruling justified the granting of a State's mistrial motion on the basis of "manifest necessity": "the manifest necessity for a mistrial can exist alongside less drastic alternatives, so long as the record discloses that the trial court considered alternatives before declaring mistrial."[40]

And so, in *Hernandez*, we examined the basis for the State's mistrial motion as demonstrating a manifest necessity therefor:

During the jury trial, Hernandez cross-examined his codefendant, Diaz, about Diaz's prior negotiated plea to a lesser offense and reduced sentence in exchange for State's testimony. This questioning went without objection. Hernandez then asked Diaz if, by his plea, he had avoided a specific mandatory minimum sentence. The State moved for mistrial specifically based on a violation of OCGA

---

[38] 244 Ga. App. 874 (537 SE2d 149) (2000).

[39] *Whitlock v. State*, 239 Ga. App. 763, 766 (2) (521 SE2d 901) (1999); *Ross v. State*, 231 Ga. App. 506, 509 (3) (499 SE2d 351) (1998).

[40] (Citation and punctuation omitted.) *Banks v. State*, 230 Ga. App. 258, 263, fn. 27 (495 SE2d 877) (1998).

§ 17-8-76[41] and claimed manifest necessity. Mistrial was granted on such basis without considering alternatives, because the "prosecutor simply did not know what th[e] remedy would be."[42]

On appeal of the denial of Hernandez's subsequent plea in bar, we found no manifest necessity for mistrial. In so doing, we held: (a) that defense counsel's questioning did not violate OCGA § 17-8-76. "OCGA § 17-8-76 prohibits only argument that a *defendant* may not serve the full amount of his sentence; it does not prohibit even making argument in this regard concerning a *witness*";[43] (b) that questioning an accomplice about his *deal* with the State is a constitutionally protected form of cross-examination: "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination";[44] and (c) that, within the context of the constitutionally protected cross-examination, the State could have addressed its concerns about revealing mandatory minimum sentencing by "mov[ing] in limine to limit cross-examination. If genuine concerns existed they could have been addressed by establishing proper boundaries or by carefully instructing the jury."[45] These alternatives were not even considered in *Hernandez*. So, we found that a "manifest necessity" for mistrial was not shown: "the cross-examination was proper and . . . the prosecutor's concerns could have been alleviated short of a mistrial[. N]o such manifest necessity existed here."[46]

Thus, contrary to the majority's assertion, we did not hold in *Hernandez* that a defendant has a "constitutional right" to inject sentencing considerations into the jury's deliberations and reveal the mandatory minimum sentence an accomplice would have received. Instead, we determined that a cross-examination question as to a mandatory minimum sentence was properly subject to a pretrial motion in limine or, if asked during trial, subject to a corrective instruction, which actions were not taken by the State.[47] As such, *Hernandez* offers no "additional protection" to a defendant's constitutional right of confrontation so as to warrant reversal of *Whitlock v.*

---

[41] No attorney at law in a criminal case shall argue to or in the presence of the jury that a defendant, if convicted, may not be required to suffer the full penalty imposed by the court or jury because pardon, parole, or clemency of any nature may be granted by the Governor, the State Board of Pardons and Paroles, or other proper authority vested with the right to grant clemency. OCGA § 17-8-76 (a).

[42] *Hernandez v. State*, supra at 875.

[43] (Emphasis in original.) Id. at 876 (1).

[44] (Punctuation omitted.) Id. at 877 (1) (c).

[45] Id.

[46] Id. at 878 (2).

[47] Id. at 878, citing *Steele v. State*, 181 Ga. App. 695, 696 (1) (353 SE2d 612) (1987) (curative instructions suffice when sentencing issues improperly interjected during trial).

*State* and *Ross v. State*. A cross-examination question about a specific mandatory minimum sentence is improper under all three cases.

As the single cross-examination question about which Vogleson complains could have been excluded in limine pursuant to *Hernandez*, it follows that the trial court's exclusion of such question during the trial of this case does not demonstrate an abuse of discretion: "[t]he trial court . . . retains wide latitude to impose reasonable limits on cross-examination, based on such concerns as the prevention of prejudice and of questioning on subjects that are only marginally relevant."[48] Here, multiple cross-examination questions about Wilson's plea to a lesser offense and reduced sentence in exchange for State's testimony were permitted. As noted by the majority, "[m]uch of Wilson's deal with the State was revealed." In this case, "the transcript is clear that the trial court restricted him only from asking questions couched in terms of 'mandatory minimum sentence.' [Vogleson] was free to question the co-defendant[ ] as to [his] understanding of the possible sentence, as long as the jury was not informed of the mandatory minimum sentence for [trafficking]."[49]

In sum, the issue upon which the majority reverses was waived by Vogleson's failure to object to the trial court's ruling. Further, the information about which Vogleson complains was put before the jury despite the trial court's ruling. Finally, under *Hernandez, Ross*, and *Whitlock*, the single question about the mandatory sentence Wilson would have received was properly kept out as an injection of punishment for the indicted crime. Thus, reversal of neither judgment nor precedent is warranted.

I am authorized to state that Chief Judge Blackburn and Presiding Judge Andrews join in this dissent.

MIKELL, Judge, dissenting.

I respectfully dissent because I cannot distinguish the case at bar from our Supreme Court's decision in *Hodo v. State*, 272 Ga. 272 (528 SE2d 250) (2000). In *Hodo*, the witness whom the defendant was not allowed fully to cross-examine, an admitted drug dealer, was not an accomplice but had admitted to criminal conduct on the stand. Id. at 274 (3). In the present case, the witness was an accomplice in the crimes being tried. Nonetheless, both witnesses had large incentives to testify favorably to the state. *Hodo* held that a defendant's right of confrontation was not violated by the trial court's refusal to allow questions about the potential sentence the witness could face because of his criminal conduct. To be sure, the witness in *Hodo*

---

[48] *Whitlock v. State*, supra at 766 (2).
[49] See *Ross v. State*, supra at 509 (3). See also *Hodo v. State*, 272 Ga. 272, 275 (528 SE2d 250) (2000).

would be speculating about what sentences he might receive for crimes with which he might be charged. And the witness in this case may not know the mandatory minimum sentences or the maximum possible sentences. But the constitutional issue concerns what questions counsel may ask, not the accuracy of the answers he might receive.

The majority in the case at bar may be correct that questions about mandatory minimum sentences for crimes with which the witness is charged, or could be charged, should be permitted. But we must follow *Hodo* until and unless the Supreme Court reconsiders its holding. Thus I would vote to affirm.

I am authorized to state that Judge Ellington joins in this dissent.

DECIDED JULY 13, 2001 — 

*Sara M. Yeager,* for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Jennifer M. Daniels, Robert M. Coker, Assistant District Attorneys,* for appellee.