## A03A2034. THOMPSON v. THE STATE.
(596 SE2d 205)

MIKELL, Judge.

Mario Ali Thompson was convicted of two counts of armed robbery, and single counts of aggravated assault, kidnapping, and possession of a firearm during the commission of a felony. As a result of a prior felony conviction, Thompson received enhanced sentencing as a recidivist. On appeal, Thompson contends that the trial court erred by granting a motion in limine that effectively deprived him of his right to cross-examine his co-defendant. He also asserts that the trial court erred in imposing a recidivist sentence, and he challenges the sufficiency of the evidence. We affirm.

Viewed in the light most favorable to the verdict,[1] the evidence shows that two armed males suddenly accosted a man in the laundry room of his apartment complex. One gunman stuck a pistol in the victim's ribs and spun him around, saying, "Dinero, dinero." The

---

[1] *Shabazz v. State,* 229 Ga. App. 465 (1) (494 SE2d 257) (1997).

gunman took the victim's wallet, $300 in cash, and his black Nike jacket. Inside a pocket of the Nike jacket were two utility bills and two money orders.

That same night, as a husband and wife were returning home to their apartment in the same complex, a gunman approached them from behind. Threatening the husband with a black pistol held to his ribs, the gunman demanded in Spanish, "Money, I want money." The wife, who later identified Thompson as the perpetrator, testified that Thompson took $3 from her husband and $5 from her. After robbing the couple, Thompson grabbed the woman and forced her at gunpoint into a car with three men. Thompson covered her face with a black jacket with a hood that resembled the black Nike jacket stolen from the first victim. She heard the men arguing and testified that one of them said, "What the f— are you doing, huh?" After "a rather long time, long drive," they arrived at an apartment. The woman found herself closed inside a room on the ground floor, where she feared that they would kill her if she tried to escape. While alone in the room, she took some papers that she later gave to Detective Frances Davis. Eventually, she was hustled back into the car with her face covered and told not to call the police. She testified that "the young man who was protesting since the beginning as to what was happening, he gave me some quarters and a telephone number to a taxicab." She obtained help from a stranger who summoned a taxi for her.

Thompson's name, driver's license number, date of birth, and apartment address appeared on one of the documents taken by the victim. Based on that information, Detective Davis prepared a photographic array, from which the victim identified Thompson. From another photographic array, the victim identified Thompson's co-defendant, Jacques Barker, as "the young man whom I think helped me."

Officers obtained a search warrant for Thompson's apartment. During the search, investigators discovered the first victim's Georgia Power bill in the bottom of a box. Davis testified that the interior of the apartment corresponded to the victim's description.

After completing a waiver of rights form, Thompson agreed to a custodial interview. Thompson told Davis that after he and another man "came upon this dude" in the laundry room, he took the man's jacket and his companion took the man's wallet. Thompson also admitted that while leaving the complex, he took a wallet from another man. However, he claimed that the woman went with them willingly. Thompson conceded that the apartment belonged to him and that he had the only key to it. Thompson told Davis that the Nike jacket that he took was hanging in the closet of an upstairs bedroom at his girlfriend's apartment. Davis found the jacket in that exact location during a search executed pursuant to a warrant.

In addition, Thompson disclosed during the interview that he had a gun in his truck. He agreed to a search of that vehicle and supplied a key to it. Inside Thompson's truck, Davis found a nine millimeter semiautomatic pistol and two magazines with live rounds.

At trial, the female victim testified that she was "[a]bsolutely certain" that Thompson was the gunman who accosted her, grabbed her, and put her inside the car. Both she and her husband recognized the black pistol admitted in evidence as resembling the one used that night.

Barker testified on behalf of the state. According to Barker, he had remained in his car while Thompson and his companion went into the apartment complex. Barker testified that when Thompson returned with an Hispanic female, he protested, saying, "Mario, what the f— are you doing? What's going on?" Barker testified that after the others told him to shut up and drive, he did as he was told. According to Barker, Thompson directed him to drive to his old apartment in Doraville where the victim was isolated in a back bedroom.

1. Thompson contends that the evidence was insufficient to sustain his conviction for the armed robbery of the first male victim because that person could not identify him. He argues that this conviction was based solely on circumstantial evidence and that the state failed to exclude every other reasonable hypothesis except guilt. We disagree.

The record contains a combination of direct and circumstantial evidence. In his custodial statement, Thompson admitted taking this victim's black Nike jacket and disclosed its location. The jacket was introduced into evidence, and the victim identified it. Personal papers belonging to the robbery victim were discovered inside Thompson's apartment. Also, the victim identified the black pistol found in Thompson's vehicle as similar to the gun used against him in the laundry room. When Thompson abducted the woman, she testified that he used a black jacket to cover her face. This evidence was sufficient to enable any rational trier of fact to find Thompson guilty under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Thompson next contends that the trial court erred by granting the state's motion in limine, which limited the cross-examination of his co-defendant. He asserts that his constitutional right to confrontation was violated by his inability to expose Barker's motivation in testifying for the state.

Prior to Thompson's trial, Barker pleaded guilty to reduced charges of robbery and aggravated assault with intent to rob. However, he had not been sentenced. The state sought to preclude the

defense from cross-examining Barker regarding the ten-year mandatory minimum sentences for armed robbery and kidnapping. The trial court ruled that Barker could be questioned as to his possible sentence, but not as to the minimum mandatory sentence.

In granting the state's motion in limine, the trial court relied upon *Ross v. State*.[2] However, after Thompson's trial, we decided *Vogleson v. State*,[3] a whole court case, disapproving *Ross*,

> to the extent [*Ross*] suggest[s] that it is not reversible error to preclude cross-examination of an accomplice regarding the deal he has reached with the State, including the disparity between the sentence the State will recommend in exchange for the accomplice's cooperation and the sentence he would have received without that cooperation.[4]

In affirming our decision, the Supreme Court held that "the trial court abuses its discretion and commits error when it cuts off all inquiry on a subject on which the defense is entitled to reasonable cross-examination."[5] The Supreme Court noted that the defense is entitled to cross-examine a witness regarding the amount of prison time he is avoiding by testifying in exchange for a reduction in his sentence.[6]

In the case at bar, Barker acknowledged that he had "something very big to lose here." When Barker was asked, "So you could get 40 years from this judge when this is all over with, couldn't you?" Barker conceded that he faced that risk. Later, when asked, "Do you have an understanding as to the advantages of testifying against Mario Thompson in this proceeding?" Barker responded, "That I could get a minimum sentence compared to if I went to trial . . . the minimum for going to trial is way higher." Although the jury could deduce from this testimony that Barker had entered a deal to testify against Thompson, the defense was not permitted to fully explore the meaning of "way higher." Nor could Thompson show that Barker would have faced a mandatory minimum sentence of 40 years if he had refused to cooperate with the state and been tried and convicted on all counts.

Although the trial court correctly applied the law at the time of Thompson's trial by excluding testimony about mandatory minimum sentences, we must apply the law as it presently exists.[7] For this

---

[2] 231 Ga. App. 506, 509 (3) (499 SE2d 351) (1998).

[3] 250 Ga. App. 555 (552 SE2d 513) (2001).

[4] Id. at 559-560 (1).

[5] (Citations omitted.) *State v. Vogleson*, 275 Ga. 637, 640 (1) (571 SE2d 752) (2002).

[6] Id.

[7] *Green v. State*, 254 Ga. App. 881, 883 (564 SE2d 731) (2002).

reason, we find that Thompson was improperly restricted from thoroughly cross-examining Barker regarding the deal that he reached with the state, including the disparity between the sentence recommended by the state and the sentence that Barker could otherwise have received.[8]

We must determine, therefore, whether the violation of Thompson's Sixth Amendment right of confrontation was harmless beyond a reasonable doubt.[9] Because the evidence of Thompson's guilt was overwhelming even without Barker's testimony, we hold that the excluded testimony could not have influenced the jury. The female victim identified Thompson as the gunman who robbed her and her husband of their cash. She also testified that Thompson was the man who forced her at gunpoint into the waiting car. Personal papers found in the apartment where the victim was held were later determined to belong to Thompson and the first robbery victim. Investigators recovered the first victim's Nike jacket from a closet inside the home of Thompson's girlfriend, the exact place where Thompson had said the jacket would be. In light of the overwhelming evidence of Thompson's guilt, we find the restriction on cross-examination was harmless beyond a reasonable doubt.[10]

3. Thompson finally asserts that the trial court erred in sentencing him as a recidivist because the state failed to tender in evidence a certified copy of any prior felony conviction, as required by OCGA § 17-10-7 (a). At sentencing, the prosecutor stated,

> I put defense counsel on notice that this defendant had an April 27th, 1992, conviction out of Bertie County, North Carolina, for the offense of assault with a deadly weapon inflicting serious injury. I have a certified copy of that judgment and sentence from the State of North Carolina with a photograph of this defendant including fingerprints. I'm submitting that to the court at this time for sentencing.

In response, defense counsel stated, "On behalf of Mr. Thompson, I have discussed with him his options as to challenging the legal sufficiency of that prior conviction. And Mr. Thompson has indicated that he does not wish to challenge the sufficiency." Thereafter, Thompson's own witness, an aunt who testified at the sentencing

---

[8] Id. at 883 (1).

[9] *State v. Vogleson,* 275 Ga. at 641 (3).

[10] Compare *Mangum v. State,* 274 Ga. 573, 577 (2) (555 SE2d 451) (2001) (conviction that relied heavily on circumstantial evidence and hearsay was reversed where defendant denied right to attack reliability of witnesses).

hearing, acknowledged that Thompson had a prior conviction, describing the incident as "that was two kids fighting in the yard and that went into something that it shouldn't have gone to. But then he did his time on that." Thompson did not contradict her testimony. Nor did Thompson dispute the prosecutor's statement that "this is a defendant who shot someone in the abdomen in 1992, got three years in prison, got out of prison, came to Atlanta and preyed upon the three victims that you saw here." And, in asking for leniency, defense counsel told the court that Thompson only has "one prior conviction [from] a number of years ago."

The time to challenge the validity of a prior conviction is at sentencing when the state attempts to prove such conviction.[11] Where the state gave a defendant notice that it intended to seek sentencing under the recidivist statute and, at sentencing, offered in evidence certified copies of previous convictions, imposition of an enhanced sentence is not invalid on the basis that the trial court never formally admitted the certified copies into evidence.[12] Clearly, the state offered evidence of Thompson's prior conviction, Thompson opted not to contest that conviction, and the trial court considered that conviction in sentencing Thompson as a recidivist. Under these circumstances, we affirm the judgment sentencing Thompson as a recidivist.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED MARCH 3, 2004.

*Kimberly A. Dymecki*, for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Christopher M. Quinn, Assistant District Attorneys*, for appellee.

---

[11] *Aldridge v. State*, 158 Ga. App. 719, 722 (4) (282 SE2d 189) (1981).
[12] *Moore v. State*, 250 Ga. App. 75, 79 (4) (550 SE2d 667) (2001).